Velma Eileen LOYD, Plaintiff-Appellant,

v.

Raymond L. LOYD, Kenneth L. Owens, and Judith Owens, Defendants-Appellees.

No. 83–1080.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1983.

Decided March 26, 1984.

---

2. *See Sumner v. Mata,* 449 U.S. 539 (1981).

Michael Pasko, Buckner, Ill., for plaintiff-appellant.

* Philip C. Wilkins, Senior District Judge for the Eastern District of California, sitting by designa-

Arthur D. King, Cline, King, Beck, Harrison & Runnels, Columbus, Ind., James M. Secrest, Hilgedag, Secrest & Liptack, Indianapolis, Ind., for defendants-appellees.

Before PELL and CUDAHY, Circuit Judges, and WILKINS, Senior District Judge.*

PELL, Circuit Judge.

The plaintiff, Velma Loyd (Velma), appeals from a summary judgment of the district court for the defendant, Raymond L. Loyd (Raymond), on Counts I and IV of the complaint. The plaintiff also challenges in her notice of appeal an order of the district court (a) granting the motion to dismiss of defendants Kenneth L. Owens and Judith Owens on Counts I and IV of the complaint, and (b) dismissing Counts II and III of the complaint, denying plaintiff's motion for joinder, and denying plaintiff's Rule 59(e) motion to alter the court's judgment. The appeal presents several issues, some of which at least need not be reached for a decision and all of which arise out of probate proceedings in the Jennings County, Indiana, Circuit Court (circuit court).

## I

### The Facts

The judgment in favor of Raymond on Counts I and IV was termed a summary judgment and followed an order of a magistrate treating the memorandum of Raymond in support of, and attached to, his answer as a motion for summary judgment on the basis that the plaintiffs failed to state a cause of action. This memorandum was not in the form of an affidavit but it did have attached to it eleven exhibits being copies of court papers in the various state court proceedings. Assuming for the purposes of this appeal the propriety of the magistrate's treating the memorandum as a motion for summary judgment, and noting that there was no response from the plaintiff appropriate to a motion for sum-

tion.

mary judgment, the facts in this case are not in dispute.

Joe Loyd, the decedent, after a thirty-seven year marriage to Inez, during which he was a skilled and competent automobile mechanic and had a pleasant family relationship with Inez and their three children, one of whom was Raymond, developed brain cancer followed by a radical change in his personality. He was committed to a state mental hospital in 1973 for a short visit, terminated by his voluntary departure. His manner of treatment of Inez completely changed and in August of 1974 he filed a divorce action against her. Divorce was granted and five days later he married Velma, the plaintiff herein, a person with whom he had been acquainted as a grade school youngster but with whom he had had no contacts until shortly before the divorce in 1974. Three days after his marriage to Velma he executed a will leaving all of his property to Velma and naming her as executrix of the will. Joe Loyd died on May 3, 1975.

The children filed a law suit contesting the validity of the will. During the period of the will contest, the circuit court appointed the plaintiff as special administratrix of the decedent's estate. The will contest resulted in a jury verdict setting aside the will on the grounds of the unsoundness of the decedent's mind. Shortly thereafter, the plaintiff resigned as special administratrix, and the circuit court appointed Raymond as the administrator of the estate. During the administration, Raymond sold one parcel of decedent's real estate to the other two defendants, Kenneth and Judith Owens (Owenses), pursuant to the circuit court's order approving the administrator's petition to sell real estate. The estate was closed by order of the circuit court in June 1979. The plaintiff did not petition the circuit court to reopen the estate but instead filed suit against Raymond, the Owenses, and one James L. Lapus, an attorney who had represented her during part of the probate proceedings. Lapus remained a party against whom the cause of action should proceed at the time the judgment was entered from which the appeal is taken

and as far as we can determine from the record there has been no disposition as to that defendant, at least not as to any time relevant here.

Count I of the complaint invoked jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332 and alleged fraud in connection with the sale of the real estate. In addition to the restoration of the widow's share of real estate pursuant to Indiana Code section 29–1–2–1(b), which gives a second childless spouse a life estate in one-third of the decedent's real property, the plaintiff also sought damages for the alleged deprivation of her one-third widow's share in the decedent's personal estate.

Counts II and III were based on state law claims of conversion and trespass neither of which alleged the requisite amount for diversity jurisdiction and must be considered pendent claims.

Count IV is directed against Raymond and the Owenses based on alleged deprivation of due process as required by the Fourteenth Amendment. The gist of the complaint was the failure to give Velma the notice required under Indiana law to sell real estate and to close an estate. The complaint under Count I also asserted various fraudulent misrepresentations to the circuit court on the part of both Raymond and the attorney Lapus.

## II

### Jurisdiction and Allied Matters

#### A.

A reader of the record in this case might well come away from it with a thought that a recitation of the jurisdictional problems presented would constitute a good question in a law school examination in a federal jurisdiction course. Count I does properly allege diversity of citizenship and the requisite jurisdictional amount. As the district court noted, however, in denying a Rule 59(e) motion, the complaint in essence was "no more than a collateral attack upon the probate proceedings." This raises the

question of the well-recognized probate exception to the exercise of diversity jurisdiction, the historical background of which is set forth in *Dragan v. Miller*, 679 F.2d 712–13 (7th Cir.1982), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511. The district court cited and apparently relied on *Dragan* in denying the Rule 59(e) motion. From our own independent examination of authorities, it appears that there has been some willingness on the part of federal courts to find the exception nonoperable. See, for a general discussion, 13 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3610, page 676, et seq. Applicable to the present case that text states at page 689:

> The same policy of noninterference [with state probate proceedings] governs jurisdiction over actions against administrators seeking a personal judgment for damages—for example, for fraud or mismanagement. Those suits may be brought in a federal court only if a final accounting has been held in the state probate court and the administrator has been released from further responsibility to that court.

The application of the exception to the present case might seem to fall out of the non-interference ambit as we have fraud alleged and there was a final accounting in the state probate court and the administrator had been released from further responsibility to that court. We note the Fourth Circuit, for example, in *Cottingham v. Hall*, 55 F.2d 664, 665 (4th Cir.1932), cited by the above text, emphasized the fact that such a suit after the closing of the estate was in no way the administration of the estate. The problem doesn't end there, however, because in *Dragan* the facts were that "the estate was distributed to the people who are the defendants in this action; and with that the probate proceeding ended." 679 F.2d at 713.

 *Dragan* arose in a somewhat different context than that of the present fraud case and while we might be inclined to say that the federal courts would be well advised to leave all matters arising out of state probate proceedings to the state courts, particularly in a period of our legal history when serious doubts have been raised as to the necessity of any diversity jurisdiction, the district court did originally entertain jurisdiction based in part on the "practical approach" adverted to in *Dragan* and upon *Hamilton v. Nielson*, 678 F.2d 709 (7th Cir.1982). The court was impressed that probate matters in Indiana are relegated to courts of general jurisdiction rather than to a specialized probate court and that the specific statutory provision for contesting alleged frauds was not limited to a probate court. In any event, we will treat the case on the basis of the particular facts here as involving an exercise of discretion and hold that there was no abuse of that discretion. In candor, if the district court had found originally that the probate exception was applicable, we doubt we would have faulted him. We simply do not think the exception is a hard and fast jurisdictional rule.

### B.

The next matter to which we turn is not strictly a matter of jurisdiction but is more in the realm of failure to state a cause of action in Count IV. The plaintiff's complaint here invokes jurisdiction pursuant to 28 U.S.C. § 1331, "this count arising under the Fourteenth Amendment to the Constitution of the United States, Section 1." The count further charges that Raymond as administrator sold the property without consent of or notice to or waiver of notice by the plaintiff and that these actions constituted state action. Section 1331 is merely a grant of original jurisdiction to the federal courts of all civil actions arising under the Constitution. The only basis occurring to us on which the plaintiff could gain entry to the federal court, and stay there any length of time, would be because of a violation of rights protected under 42 U.S.C. § 1983. Indeed, in her brief, Velma states that she had "alleged a violation" of section 1983. Later in her brief she explains that she made a claim under section 1983 "without, however, the invocation

thereof, invoking instead federal jurisdiction."

■ Assuming that she really did intend to rely on section 1983, and we cannot conceive there would be any other basis here for invoking federal jurisdiction, we are unable to perceive any state action or color of law in the acts of an administrator in an estate who is charged with the settlement of a private individual's affairs. Although the number of pages of annotations in West's United States Code Annotated has risen from more than 56 pages in the 1957 edition, which was about the time that the existence of section 1983 was rediscovered, to a staggering number in excess of approximately 1364 pages, we fail to find any support in that source for the necessary state action or color of law. It occurs to us that the acts of a personal representative of an estate in probate proceedings are so far beyond the pale that no one except Velma has deigned to seek to expand the scope of section 1983 to this probate situation. We say that notwithstanding that situations undreamt-of in 1950 are now cognizable under section 1983, a development no doubt attributable to the ingenuity of lawyers not overly hindered by the courts.

It is true the personal representative is appointed by the court and is acting pursuant to general authority inherent in the appointment and specific authority in the direction of individual administration acts. We do note, however, that there is no conspiracy alleged with the judge of the circuit court. The closest analogous situation we can find is in the appointment of counsel where there would be a two prong basis for assertion, first, that all lawyers are officers of the court, and, secondly, that the attorney has been appointed specifically by the court. The holding of the Supreme Court in *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), destroys any credibility that this assertion may have enjoyed. In *Polk County,* the Court held that a public defender, appointed by a trial court to perform the traditional functions of a lawyer in the representation of an indigent criminal defendant, does

not act "under color of state law." A number of circuit courts, including our own, had previously reached this same result. *French v. Corrigan,* 432 F.2d 1211, 1214 (7th Cir.1970), *cert. denied,* 401 U.S. 915, 91 S.Ct. 890, 27 L.Ed.2d 814 (1971); *Page v. Sharpe,* 487 F.2d 567, 570 (1st Cir.1973); *Barnes v. Dorsey,* 480 F.2d 1057, 1060–61 (8th Cir.1973); *Szijarto v. Legeman,* 466 F.2d 864 (9th Cir.1972). As this court said in *French,* at 1214, the appointed attorneys are not functionaries of the state but were provided in their private capacity acting on plaintiff's behalf. We recognize, of course, that in the case of the personal representative, the fiduciary is protecting interests of the creditors and, indeed, the state, insofar as obligations to the state are concerned, but nevertheless the personal representatives are acting in a private capacity and not as functionaries of the state.

Another analogous case involving a fiduciary, a trustee of a community land grant, was *Mondragon v. Tenorio,* 554 F.2d 423 (10th Cir.1977), *cert. denied,* 434 U.S. 905, 98 S.Ct. 305, 54 L.Ed.2d 193. Although the state courts had described the trustees in some opinions as being "quasi-municipal corporations" and even though some of their actions had to be approved by a state court judge, the federal court held they were not acting under color of state law.

Velma does not claim that the Indiana probate scheme under which Raymond operated was unconstitutional. Rather, she claims that Raymond misused the probate procedures by misrepresenting to the court that he had notified her properly. The distinction between an attack on the constitutionality of a statute and an attack on a person's alleged misuse of that statute is crucial in light of the Supreme Court's recent decision in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In *Lugar,* the Supreme Court held that, when a debtor sues private creditors alleging that those creditors abused the statutory prejudgment attachment procedures, the debtor fails to state a cause of action under section 1983

because the creditors were not acting with "the weight of the State behind their private decision." *Id.* at 940, 102 S.Ct. at 2756. On the other hand, as to a separate count, which alleged that the statute was unconstitutional, the Court held that the debtor had stated a cause of action because "the procedural scheme created by the statute obviously is the product of state action." *Id.* at 941, 102 S.Ct. at 2756. Consequently, here, where Velma only complains about Raymond's use of the statute, Raymond cannot be said to act under color of state law. Therefore, Count IV fails to state a cause of action.

In sum, Raymond and, certainly the Owenses, were not acting under color of state law and it was appropriate to enter judgment against Velma on this count.

### C.

Another problem is presented by what might be termed the paperwork in the district court. On August 4, 1982, the judge signed two documents, one captioned "Order" which was accompanied by a memorandum and the second captioned "Judgment." In the Order the court granted Raymond's motion for summary judgment as to Counts I and IV and the motion to dismiss the Owenses. Counts II and III were dismissed because "all federal claims against Loyd have fallen and pendent jurisdiction of Counts II and III is inappropriate." This obviously involved the court considering the diversity jurisdiction as being one of the federal claims because Counts II and III would be cognizable only on that basis but the requisite jurisdictional amount was not there. The Order also directed the action to proceed as to attorney Lapus.

■ In the other signed document, the Judgment, there is reference only "that plaintiff Velma Eileen Loyd take nothing from defendant Raymond L. Loyd." If this was all that was involved, there would be no jurisdiction in this court of any of the parties because there was still remaining one defendant to be tried. The judge did, however, put as a part of the judgment a finding that there was no just reason for delaying the entry of judgment, and judgment was therefore entered on Counts I and IV as to Raymond. This we regard as compliance with Rule 54(b) of the Federal Rules of Civil Procedure and there is a final judgment against Velma as to Raymond but that is all that is successfully lodged in this court.[1]

No doubt if Lapus had been included in the Order dismissing the Owenses we would not be bending appellate jurisdictional rules unduly by saying there was a final judgment of dismissal as to both Owenses and Lapus. Unfortunately, however, Lapus remained behind and did not come with the appeal. The language of Rule 54(b), Federal Rules of Civil Procedure, is quite explicit.

> In the absence of such determination and direction, *any order or other form of decision, however designated,* which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis added.)

■ Velma in her notice of appeal attempted to appeal from the order as to the Owenses but this does not save the application of Rule 54(b) as there is no final appealable judgment as to them. The lack of jurisdiction over that portion of the case, however, is probably academic as our disposition of the claims against Raymond will be dispositive of any claims against them as purchasers of the real estate. Likewise,

---

**1.** A minor technical problem exists in the fact that in her notice of appeal Velma, although having five numbered paragraphs, never referred to an appeal of the "judgment" but each paragraph referred specifically to an "order."

We decline to be supertechnical and on that basis to deny appellate jurisdiction to the final judgment in favor of Raymond on Counts I and IV.

the appellant apparently is not challenging the dismissal of Counts II and III.

### III

#### The Merits

■ To the extent we need to reach the merits of this case, our opinion is that the summary judgment was properly granted on all counts. Aside from our conclusion that Velma did not establish that the actions of Raymond were under color of law, which is dispositive on the case before the district judge for summary judgment, there was no denial of due process. This claim was primarily grounded on alleged failure to give notice of the proceedings to sell the realty and to close the estate. There were also allegations that Raymond fraudulently made certain representations to the court such as there had been notice and with regard to matters of accounting, but these allegations are disposed of as there was in fact notice of opportunity to have resisted the claims of misrepresentation if in fact they existed.

Also, plaintiff claimed that she had not been paid all of her surviving spouse's allowances and that there were excessive administration expenses charged and that she lost her proper share through excessive administration charges and a claimed fraudulent setoff on the surviving spouse's allowances. The documents before the district court showed that she had actually been paid $3,000 for the surviving widow's allowance when she was special administratrix and this was the appropriate amount payable at the time of the death of the decedent. Also, the claims with regard to the disposition of her interest in personal property were again something that should have been handled by her or her attorney at the time of the scheduled hearing on the closing of the estate. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The notice provided in the probate proceedings in this case fully satisfied the mandate of *Mullane.*

The uncontradicted documentary evidence submitted by Raymond with his "motion" for summary judgment establishes that summary judgment on the due process claim was proper. Despite plaintiff's assertions here to the contrary, the documents submitted with the motion demonstrate that the personal representative complied with all the procedures delineated in the Indiana Code, sections 29–1–15–11 and 29–1–15–16, for the sale of estate property. The plaintiff received personal service of the notice of hearing on the petition to sell, and the petition contained all the requisite details. Similarly to her nonactivity in the circuit court, although Velma was ordered by the magistrate to respond to the motions for summary judgment in accordance with Rule 56(e), she never filed any countervailing documents negating the specific proof of notice in the documents which the magistrate treated as part of the motion for summary judgment.

■ As to the closing of the estate, the plaintiff was present in the courtroom for the first scheduled hearing on closure, which was continued on the motion of her own attorney. That attorney was present at the final hearing to close the estate. Although he withdrew from his representation of the plaintiff at the commencement of the final hearing, due to the alleged failure of the plaintiff to cooperate with him, the notice served upon that attorney establishes notice to the client. Indiana Code § 29–1–1–14. The estate closing procedures, however, were adequate to safeguard the plaintiff's due process rights. She introduced no evidence, by affidavit or otherwise, to contradict the defendant's documentary proof on this matter. She had prior notice of the relevant proceedings, yet she chose not to participate. Her decision not to exercise her opportunity to be heard did not deny her due process of law. Much of what we have just said would also be applicable to the disposition on the merits of Count I.

The district court in its memorandum accompanying its order, relying on Indiana

Code § 29–1–1–21, held that while a collateral suit predicated on fraud would be permitted it must be instituted against the representative within one year of discharge. That section of the statute reads as follows:

> For illegality, fraud or mistake, upon application within one [1] year after the discharge of the personal representative upon final settlement, the court may vacate or modify its orders, judgments and decrees or grant a rehearing therein.

Velma argues that at least a five-year statute of limitations should be applicable. Indeed, she indicates that perhaps an even greater period might be appropriate under other sections of the general statute of limitations, relying primarily on section 29–1–1–24 which reads as follows:

> Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this probate code or if fraud is used to avoid or circumvent the provisions or purposes of this probate code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud including restitution from any person (other than a bona fide purchaser) benefiting from the fraud, whether innocent or not.

This section was enacted by the legislature in 1975 and may not have become effective prior to the date of Velma's newly acquired husband's death. We will assume, however, for the purposes of this argument that it being a remedial statute it would have been available to Velma in her present action. This section does not specify any time limitation and the statute is apparently too recent to have generated a judicial gloss. We do note, however, that the Indiana Probate Code Study Commission in its 1975 comments, to which some deference should be given, stated that the amendment was patterned after section 1–106 of the Uniform Probate Code but differed from that code in that under the 1975 amendment the statute of limitations provided in the civil code applies.

■ Regardless of whether section 29–1–1–21 or section 29–1–1–24 applies, however, the plaintiff is unable to maintain her cause of action. As previously mentioned, there is uncontroverted evidence that the plaintiff received notice of the petition to sell real estate. Section 29–1–1–10 provides that, where notice of any pleading must be served upon interested parties prior to court determination of an issue, any interested party "may" file objections to the pleading "on or before the day set for hearing." *See also* § 29–1–16–7 (same provision with respect to the final account of a personal representative). By its own terms this section does not indicate whether a party with an objection to a pleading *must* file objections at that time or lose the opportunity ever to question the propriety of the pleading.

We earlier referred to deference to the Commission's comments and for no other reason this deference is due because of the Indiana Code provision that these comments "may be consulted by the courts to determine the underlying reasons, purposes and policies of this article, and may be used as a guide in its construction and application." § 29–1–1–4. The comments to section 29–1–1–10 reveal that a party *must* object to a pleading, if at all, on or before the day of the hearing: "The purpose of this section is to *require* all interested persons ... to file their objections in writing ...." (Emphasis added.) Because the plaintiff received notice but failed to object or to follow through by personal participation in either the real estate sale or the final settlement, she cannot now assert improprieties therein.

Indiana case law long ago established that, unless a claimant received no notice of a proceeding, she had no remedy under the predecessors of section 29–1–1–21. *Dillman v. Barber,* 114 Ind. 403, 16 N.E. 825 (1887); *Overbeck v. Harmeyer,* 164 Ind.App. 576, 331 N.E.2d 41 (1975). Section 29–1–1–24 has similar preclusive effects. The comments of the study commission are again instructive. Those comments state, *inter alia:*

> Any action under this section is subject to usual rules of res judicata; thus, if a forged will has been informally probated,

an heir discovers the forgery, and then there is a formal proceeding ... of which the heir is given notice, followed by an order of complete settlement of the estate, the heir could not bring a subsequent action under section 1–106 but would be bound by the litigation in which the issue *could have been raised.*

(Emphasis added.) The case here is quite similar to the hypothesized case in the comment. The plaintiff received notice of both the petition to sell the disputed real estate and the final settlement.

■ As mentioned in the due process section above, the notices received by the plaintiff were sufficient to bind her to the results produced in the subsequent hearings. Notice of the hearings, of itself, might not preclude a later suit. Here, however, the notice apprised the plaintiff of the subject matter which forms the basis of the plaintiff's suit. The petition to sell real estate served on the plaintiff described the land which the Owenses bought, its fair market value, and the reasons which necessitated the sale. The petition revealed all the information later relied upon by the plaintiff to attempt to establish her fraud claim with respect to the sale. Similarly, the notice to close the estate notified the plaintiff that she must raise any objections she had to the final settlement at that time.

Thus, she was twice aware that the administrator had sold the land in question. She could have filed objections at the time she received the notice of the sale, thus meeting the deadline of section 29–1–1–10. See also § 29–1–16–7 with respect to the final settlement. Having failed to do so, res judicata precludes her from now contesting the propriety of the sale.

■ Finally, Velma argues in effect that she had a vested one-third interest for life in the real estate and that irrespective of the court's approval of the sale and notice to her the court had no power to authorize such a sale. She cites to us Indiana cases to this effect which for the most part are pre-1900. Her basis for doing this is presumably to show how well established the law is in this respect. This ignores, however, that despite the objec-

tions of some significant portion of the probate bar who were thoroughly versed in the old probate statutes and procedures thereunder, Indiana adopted in 1953, effective in 1954, a substantially new probate code designed to simplify and streamline probate procedures. Indiana Code section 29–1–2–2(a) does provide that any interest acquired by a widow in a decedent's real estate, not exceeding one-third thereof, shall be received by her free of all demands of creditors. Nevertheless, subsection (a) is followed by subsection (c) providing that subsection (a) "shall not be construed to prevent the sale of such real estate under the provisions of this [Probate] Code." The widow in such event was to be entitled to her share out of the proceeds of the sale. That of course put her in the position of looking to the distribution of the estate which was handled in the closing of the estate to which we have already referred. The petition to sell real estate filed by Raymond as administrator did state that part of the proceeds of the sale was to pay for costs of administration and taxes. The final decree of the circuit court noted that she had filed written objections, apparently by attorney Lapus, but had not appeared in person at the time of the hearing, that she had refused to cooperate with her attorney in the preparation for the hearing, that the attorney was present at the time of the hearing and asked permission to withdraw, and that the order of distribution was to pay the balance of the assests in the estate "for distribution, including the share of Velma Eileen Loyd" to the Clerk of the Jennings Court.

Finally, with respect to this aspect of the case, we note section 29–1–1–14 of the Indiana Code:

(a) If an attorney shall have entered his appearance in writing for any person in any probate proceeding or matter pending in the court, all notices required to be served on the person in such proceeding or matter may be served on the attorney and such service shall be in lieu of service upon the person for whom attorney appears.

For the reasons stated herein, the judgment of the district court is Affirmed.