In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-3078

BRION M. STORM,

*Plaintiff-Appellant,*

*v.*

ROBERT Z. STORM,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 02-C-219—**David F. Hamilton**, *Judge.*

ARGUED FEBRUARY 27, 2003—DECIDED MAY 13, 2003

Before KANNE, DIANE P. WOOD and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* The facts of this family inheritance dispute center around the role Robert Z. Storm had, if any, in persuading his mother Evelyn Storm, to change the terms of her will and revocable trust. In 1993, Evelyn executed a revocable trust agreement, creating the Evelyn F. Storm Trust, into which she transferred a significant amount of her property. At that time, the terms of the trust provided in part that her son Robert would receive $20,000 from her estate upon her death, while her grandson Brion M. Storm would receive various items of personal property as well as one-half of the residue of her estate. Despite various amendments to the original trust agree-

ment, until January 2000 Brion continued to be listed as a beneficiary entitled to one-half of the residue.

In late 1999, Evelyn suffered a serious stroke, and in December of that year, Robert moved her from Illinois to his home in Indianapolis, Indiana. After the move, Evelyn made several changes to her testamentary documents: on January 18, 2000, approximately six weeks after she was moved to Indianapolis, Evelyn executed a new will and a new trust agreement, which no longer included Brion as a beneficiary. On October 31, 2000, Evelyn once again executed a new will and an amendment to the trust, naming Robert as the sole beneficiary of her estate. Evelyn died on March 14, 2001.

On February 7, 2002, Brion filed this complaint as a diversity action under 28 U.S.C. § 1332. He alleged that before December 1999, he had a significant inheritance expectancy under the terms of Evelyn's trust. He further contended that sometime in 2000, Robert exerted undue influence on his mother Evelyn, causing her to execute a new will and a new trust naming Robert the sole beneficiary of her estate, thus tortiously interfering with Brion's inheritance expectancy.

Robert moved to dismiss Brion's complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that the district court lacked subject matter jurisdiction over the claim, as this was essentially a probate matter. The district court granted Robert's motion to dismiss, finding that Brion's lawsuit "is so closely related to a probate proceeding as to fall within the probate exception" to federal jurisdiction. *Storm v. Storm*, No. IP 02-219-C H/K, 2002 U.S. Dist. LEXIS 14732, at *2 (S.D. Ind. July 15, 2002). We agree that jurisdiction here is lacking, and affirm the dismissal of Brion's claims.

## ANALYSIS

We review a district court's decision to dismiss a complaint for lack of subject matter jurisdiction *de novo*.[1] *Iddir v. INS*, 301 F.3d 492, 496 (7th Cir. 2002). For purposes of our review, we accept as true the well-pleaded factual allegations in the plaintiff's complaint, drawing all reasonable inferences in favor of the plaintiff. *Id.*

We begin with the well-established rule that "a federal court has no jurisdiction to probate a will or administer

[1] The parties dispute the appropriate standard of review. Robert argues that our review is only for an abuse of discretion by the district court, citing language from our decision in *Loyd v. Loyd*, 731 F.2d 393, 397 (7th Cir. 1984) ("[W]e will treat the case on the basis of the particular facts here as involving an exercise of discretion and hold that there was no abuse of that discretion. In candor, if the district court had found originally that the probate exception was applicable, we doubt we would have faulted him.") and *Rice v. Rice Found.*, 610 F.2d 471, 477 (7th Cir. 1979) ("Even where a particular probate-like case is found to be outside the scope of the probate exception, the district court may, in its discretion, decline to exercise its jurisdiction.").

In this case, the district court found that it was without jurisdiction to hear this lawsuit—that is a conclusion quite different from finding jurisdiction exists but declining to exercise it (an abstention case like that referred to in *Rice*). Review of abstention decisions presents a different matter from the review of determinations that subject matter jurisdiction does not exist at all. To the extent that *Loyd* speaks of discretion, we believe that language is best characterized as expressing a certain deference to the district court's greater familiarity with a particular State's probate law and court system, as well as an acknowledgment that the probate exception is not clearly delineated nor "a hard and fast jurisdictional rule." *Loyd*, 731 F.2d at 397. Because the existence of subject matter jurisdiction goes to the ultimate question of whether the federal courts have the power to entertain and decide a case, we emphasize that our review in such situations is *de novo*.

an estate." *Markham v. Allen*, 326 U.S. 490, 494 (1946); *see also Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982). Under the so-called "probate exception," even when the requirements of diversity jurisdiction have been met—the parties are diverse and the amount in controversy exceeds the jurisdictional threshold, *see* 28 U.S.C. § 1332(a)(1) (2003)—a federal court nonetheless lacks jurisdiction over cases involving probate matters. This jurisdictional exception, entirely the creation of the courts, was originally justified on historical grounds. *See Dragan*, 679 F.2d at 713; *Rice v. Rice Found.*, 610 F.2d 471, 475 & n.6 (1979). Since its earliest invocations in the courts of this country, *see Farrell v. O'Brien*, 199 U.S. 89, 101-10 (1905) (discussing several early cases to have considered the question of federal jurisdiction over probate matters), the exception has become an established feature of our federal judicial system.

This Court has noted that the precise contours of the probate exception have not been—nor really can be—clearly defined. *See Georges v. Glick*, 856 F.2d 971, 973 (7th Cir. 1988); *Loyd v. Loyd*, 731 F.2d 393, 397 (7th Cir. 1984). The exception is rather easily applied to "pure" probate matters—*i.e.*, those involving the administration of an estate or the actual probate of a will. *Rice*, 610 F.2d at 475. Where difficulties arise is in determining whether certain matters beyond "pure" probate issues are nonetheless "ancillary" to the core probate activities to such a degree that they too fall within the exception. *See Dragan*, 679 F.2d at 715; *see also Farrell*, 199 U.S. at 110 (finding that a federal court lacked jurisdiction over a suit to set aside the probate of a will "when the remedy to set aside afforded by the state law is a mere continuation of the probate proceeding, that is to say, merely a method of procedure *ancillary to the original probate*, allowed by the state law for the purpose of giving to the probate its ultimate and final effect" (emphasis added)).

Thus, as we stated in *Dragan*, the process of determining whether a state-law action should fall within the probate exception involves the concept of "ancillarity," which itself "is an invitation to apply a concept—here the concept of probate—pragmatically." *Dragan*, 679 F.2d at 715. This means that "labels" should not be a dispositive factor in our analysis. *Id.* at 716-17. Rather, in *Dragan*, we adopted a "practical approach" to determining the boundaries of the probate exception. *Id.* at 715. We directed courts to consider the policy goals underlying the exception to determine whether the court had jurisdiction over a particular case—that is, a suit is considered ancillary to a probate proceeding, and thus within the exception, if "allowing it to be maintained in federal court would impair the policies served by the [exception]." *Id.* at 715-716. We have also cautioned that the probate exception, as a judicially created exception to the statutory grant of diversity jurisdiction, should be construed narrowly. *See Georges*, 856 F.2d at 973 (citing *Rice*, 610 F.2d at 475).

In *Dragan* and subsequent cases, we identified several practical bases for the exception. One practical reason for excluding probate matters from federal jurisdiction, albeit not the strongest one, is to encourage legal certainty—that is, to ensure that the outcomes of probate disputes will be consistent by limiting their litigation to one court system, rather than providing disputants the choice between two. *Dragan*, 679 F.2d at 714. A second goal is to promote judicial economy. *Id.* The process of determining and effectuating a decedent's testamentary wishes will generally begin in a state court. "If the probate proceeding thus must begin in state court, the interest in judicial economy argues for keeping it there until it is concluded." *Id.* "By restricting probate matters and will contests to state courts, questions as to a will's validity can be resolved concurrently with the task of estate administration." *Georges*, 856 F.2d at 974. This serves to

preserve the resources of both the federal and state judicial systems and avoids the piecemeal or haphazard resolution of all matters surrounding the disposition of the decedent's wishes.

We have referred to "relative expertness" as another practical reason for the exception. *Dragan*, 679 F.2d at 715. Because state courts have nearly exclusive jurisdiction over probate matters, state judges vested with probate jurisdiction develop a greater familiarity with such legal issues. A final practical reason for having an exception is to avoid unnecessary interference with the state system of probate law. *Georges*, 856 F.2d at 974. This reason is actually a consequence of the other rationales: if state courts have the exclusive task of probating a will, and thus develop the relative expertise to do so (including the expertise to deal with all matters ancillary to probate), then federal court resolution of such matters is unlikely to be more than an unnecessary interference with the state system.

This case does not involve the administration of an estate, the probate of a will, or any other "pure" probate matter. The question for this Court then is whether the action brought by Brion should be considered ancillary to a probate proceeding, thus depriving the federal courts of jurisdiction. The district court found that this lawsuit was in "substance and effect" a will contest, and as such was ancillary to a probate proceeding and covered by the probate exception. *Storm*, 2002 U.S. Dist. LEXIS 14732, at *10, *19-20. Brion essentially raises two arguments as to why the exception is nevertheless inapplicable. First, he contends that this is a tort action rather than a will contest. Second, he argues that this case involves the terms of a trust rather than a will.

At bottom, the first issue Brion faces is whether his complaint, though framed in terms of the state law tort

of interference with an inheritance expectancy, is in substance a will contest, and thus properly considered an action ancillary to pure probate proceedings. Wrongful interference with an inheritance expectancy is a recognized tort in Indiana; such an action may be brought in a court of general jurisdiction, provided a will contest is unavailable to supply an adequate remedy. *Minton v. Sackett*, 671 N.E.2d 160, 162-63 (Ind. Ct. App. 1996); *see also* RESTATEMENT (SECOND) OF TORTS § 774B (1979). But as we have just observed, mere labels—whether an action is styled as a tort action or will contest—are not decisive in our probate-exception analysis.

We note that what Brion seeks is a legal determination that the terms of Evelyn's final will and trust, executed in October 2000, are invalid because they were allegedly procured through the exertion of undue influence by Robert. Brion claims that the change in the terms of the will and trust worked to his detriment by frustrating his established inheritance expectancy. He therefore seeks damages, presumably to be measured in part by what he would have received had Evelyn's actual testamentary wishes, as expressed in the previous will and trust, governed the disposition of her assets (he also seeks exemplary or punitive damages). While Brion phrases his action as one involving tortious interference with his inheritance expectancy, the practical effect of his lawsuit would be similar to that of a successful will contest: the terms of the final, allegedly invalid testamentary instruments would essentially be bypassed, while Brion would receive, as damages, the assets he would have otherwise been entitled to under what he says are Evelyn's actual will and trust. *Cf. Dragan*, 679 F.2d at 716 (noting that a lawsuit seeking the imposition of a constructive trust would, if successful, cause an estate to pass through the intestacy statue—thus, "this is not the form of the action but would be its *practical effect* if it succeeded" (emphasis added)).

An examination of the practical reasons for having a probate exception demonstrate that Brion's tort action is simply an attempt to "call[ ] a will contest an action in tort." *Id.* at 717. As such, we agree with the district court that this case belongs in state court.

Granted, the fact that no will has yet been admitted to probate and thus no state-court probate proceedings have been initiated[2] weighs against dismissal in order to conserve judicial resources or avoid interference with ongoing proceedings. But dismissal is nonetheless appropriate here because Indiana law would require that Brion's tort claim be heard in the probate division of the Marion Superior Court, a state court which hears testamentary disputes more often than any federal court. *See Storm*, 2002 U.S. Dist. LEXIS 14732, at *16-17.[3] The

---

[2] In addition to the trust, Evelyn left a will, but it is unclear whether or when that will would be submitted for probate in the Indiana courts. The district court noted that it had no information as to the future disposition of the will or estate. *Storm*, 2002 U.S. Dist. LEXIS 14732, at *5. We simply note that if this will is admitted to probate at some future time, the claim raised by Brion in this lawsuit would more appropriately be included as part of those proceedings, thus implicating both the judicial economy and the unnecessary interference policy rationales.

[3] The district court determined that:

In the state courts, Brion's claim would be heard by the Probate Division of the Marion Superior Court, which has both general and specialized jurisdiction. *See* Ind. Code §§ 33-5.1-2-4 and -2-9. The Superior Court is a court of general jurisdiction, including probate matters, Ind. Code § 33-5.1-2-4(2), but Indiana statutes plainly establish a specialized jurisdiction for the Superior Court's Probate Division. The legislature instructed the Marion Superior Court to adopt rules of the court dividing the work of the court among divisions, including a Probate Division. Ind. Code § 33-5.1-2-

(continued...)

district court noted that this case would "present precisely the sorts of issues that would arise in a will contest." *Id.* at \*14. Given that federal courts rarely, if ever, deal with such matters, and that the Indiana state courts are vastly more familiar with the factual and legal issues involved, dismissal in this case is consistent with the policy behind the probate exception.

Brion argues that Indiana does not have a state policy of channeling probate or probate-like cases into specialized courts, as the State has vested jurisdiction over probate matters in the state courts of general jurisdiction. He acknowledges that Marion County, Indiana has a Probate Division as part of the superior court system, but he suggests that this Court has said that such internal divisions of a court of general jurisdiction should have no bearing on our analysis:

> [The State of Illinois] has abolished separate probate courts and vested the probate jurisdiction in its courts of general jurisdiction, the circuit courts. The Cook County circuit court has subdivided itself into divisions, one of which is the probate division; but this organizational refinement has no jurisdictional significance. "Since both the probate division and the law division are . . . simply divisions of the same constitutional court of general jurisdiction, it follows neces-

---

3  (...continued)
> 9(c). Indiana statutes give the Probate Division jurisdiction over issues of trusts as well as wills. Ind Code § 30-4-6-1 ("Jurisdiction in this state for all matters arising under this article [Trust Code] shall be with the court exercising probate jurisdiction."). That probate jurisdiction includes the power to rescind or reform a trust. Ind. Code § 30-4-3-25. Thus, Indiana law would assign Brion's claims to the Probate Division of the Marion Superior Court.

*Storm*, 2002 U.S. Dist. LEXIS 14732, at \*16-17.

sarily that both of these tribunals could have had equal and concurrent subject matter jurisdiction over the [matter at issue]."

. . . [R]etention of federal diversity jurisdiction over such cases will not interfere with the state policy of channeling all probate matters to specialized courts.

*Hamilton v. Nielsen*, 678 F.2d 709, 710 (7th Cir. 1982) (citations omitted) (quoting *Alfaro v. Meagher*, 326 N.E.2d 545, 548-59 (Ill. App. Ct. 1975)). Brion cites another case in which we affirmed federal jurisdiction, where we noted that the district court "was impressed that probate matters in Indiana are relegated to courts of general jurisdiction rather than to a specialized probate court." *Loyd*, 731 F.2d at 397.

Brion suggests that this language indicates that the district court was wrong to find that this factor weighed in favor of dismissal, because even if his case would be referred to the probate division of the Marion Superior Court, that is merely an internal division of a court of general jurisdiction. We think Brion misreads our emphasis in *Hamilton*. In that case, we affirmed federal court jurisdiction over a lawsuit in which a will beneficiary sought an award of money damages from the executors of the will for alleged negligence in the management of the estate. *Hamilton*, 678 F.2d at 710. Important to our analysis in that case was the fact that probate of the will in state court had essentially concluded and the federal suit did "not involve the validity or construction of the will or seek to change the distribution of the assets of the estate decreed by the circuit court." *Id.* In determining whether the case came within the probate exception, we emphasized that no probate-like issues were involved—those issues had previously been determined by the Illinois state court and were not challenged in the federal suit. Given that, the fact that Illinois no longer had legisla-

tively mandated, specialized probate courts had "no jurisdictional significance" to our analysis. We continue to believe that the organizational divisions of courts of general jurisdiction (like that of the Marion Superior Court) have "no jurisdictional significance" for federal courts when no probate-like issues are involved.

When probate-like matters *are* at issue in a dispute, however, we reiterate that it is significant to our analysis that state courts vested with probate jurisdiction are much more familiar than are federal courts with the factual and legal issues involved. Indeed, in *Hamilton*, this Court went on to assert that, "This is not to say, of course, that federal courts can now probate wills in Illinois because the state has abolished its specialized probate courts. Probate remains a peculiarly local function which federal courts are ill equipped to perform." *Id.* This tort action is, for practical purposes, closely related to a will contest, and thus ancillary to a pure probate case. Because this case raises probate-like issues, it falls within the probate exception despite its characterization as a tort suit.

Brion also argues that the probate exception is inapplicable to this case because the dispute involves an *inter vivos* trust, which includes specific provisions for the disposition of the trust *res* upon Evelyn's death, rather than a will. As the district court noted, had Brion alleged that Robert exerted undue influence on Evelyn that caused her to modify the terms of her *will*, rather than the terms of her *trust*, dismissal would have been the clear result. *Storm*, 2002 U.S. Dist. LEXIS 14732, at *10-11. But that is not the case here—and we must determine whether the use of a trust to convey testamentary wishes, rather than a will, requires a different result.

This Court has previously refused to adopt a *per se* rule making the probate exception inapplicable when the

testamentary instrument at issue is a trust rather than a will. *Georges*, 856 F.2d at 974 n.2. In *Georges*, we said that "[t]he inter vivos trust [at issue in the case] is clearly a will substitute. However, the fact that this case does involve a will substitute does not automatically render the probate exception applicable." *Id.* (citing *Dragan*, 679 F.2d at 715). Instead, we turn again to our practical approach, looking to the policies underlying the probate exception, to determine if Brion's lawsuit belongs in state court. For the same reasons that the exception applies to this suit despite its characterization as a tort action, we believe the exception applies despite this being a dispute over the terms of an *inter vivos* trust rather than a traditional will.

Given the growth in recent years of various "will substitutes," we are loath to throw open the doors of the federal courts to disputes over testamentary intent simply because a decedent chose to use a will substitute rather than a traditional will to dispose of his or her estate. We believe that our practical approach to determining whether the probate exception to diversity jurisdiction applies is an appropriate means by which to judge whether disputes surrounding such will substitutes should be within the jurisdiction of the federal courts.

## CONCLUSION

Because we agree with the district court that "[a]s a practical matter, this case is indistinguishable from a will contest," *Storm*, 2002 U.S. Dist. LEXIS 14732, at *14, we find that the probate exception applies despite the characterization of this case as a tort action and despite the use of an *inter vivos* trust rather than a traditional will. Dismissal of the action for lack of subject matter jurisdiction is therefore AFFIRMED.

No. 02-3078                                                              13

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*