**In re: ESTATE OF Anne F. THREEFOOT, Deceased,**

**Anne W. Miller, Petitioner.**

**No. 03–2741 MA/A.**

United States District Court, W.D. Tennessee, Western Division.

March 15, 2004.

Michael Thomas Evangelisti, Robert F. Miller, Farris Mathews Branan Bobango Hellen & Dunlap, PLC, Memphis, TN, for Anne F. Thhreefoot.

Robert F. Miller, Esq., Farris Mathews Branan Bobango Hellen & Dunlap, PLC, Memphis, TN, Jason S. Zarin, U.S. Department of Justice, Washington, DC, for Anne W. Miller.

Terrell L. Harris, U.S. Attorney's Office, Memphis, TN, for James Allen, miscellaneous.

James Allen, miscellaneous, Memphis, TN, Pro se.

## ORDER GRANTING MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEY'S FEES

MAYS, District Judge.

On August 27, 2003, Anne W. Miller, as executrix of the estate of her mother, Anne F. Threefoot, brought a petition in the Probate Court of Shelby County, Tennessee. In that petition, Miller seeks to execute a Partnership Agreement on behalf of the estate, to transfer certain property to the partnership, and to sell certain real estate and fund the partnership with the proceeds. She also seeks a determination that the lien for federal estate taxes arising under 26 U.S.C. § 6324(a)(1) applies to the partnership interest which is part of the decedent's estate rather than to the property to be transferred to the partnership. Miller joined the United States as a party under 28 U.S.C. § 2410. The United States removed the case to this court on October 2, 2003, asserting that the court has federal question jurisdiction. Miller filed a motion to remand to state court on October 31, 2003, in which she also requests attorney's fees, and the United States filed a brief in opposition to the motion to remand on November 18, 2003. For the following reasons, Miller's motion to remand is GRANTED, and her request for attorney's fees is DENIED.

### I. Background

Miller's petition alleges the following facts. Prior to Threefoot's death on September 23, 2002, the law firm of Waller Landsen Dortch & Davis in Nashville, Tennessee, was retained by Threefoot to provide estate planning services. (Pet. at ¶ 2.) Those services included forming a family limited partnership under the laws of Tennessee to be known as the Threefoot Family Partners, L.P. ("Partnership") in which Threefoot would own a ninety-nine percent interest and Miller would own a one percent interest. (*Id.*) Under the Partnership Agreement and a related Subscription Agreement, Threefoot would have agreed to contribute to the Partnership all of her interest in certain tracts of real estate in Perry County, Tennessee (the "Perry County real estate") and in certain securities, bonds, and cash in her brokerage accounts. (*Id.* at ¶ 3.) The Certificate of Formation for the Partnership was signed by Miller and filed with the Tennessee Secretary of State on September 16, 2002, and with the Shelby County Register on September 23, 2002. (*Id.* at ¶ 4.) The Partnership Agreement and Subscription Materials for the Partnership were prepared by September 20, 2002, but they were not executed prior to Threefoot's death on September 23, 2002. Threefoot died testate.

Miller alleges that she and Threefoot made a binding oral agreement to enter into the Partnership Agreement and seeks

to enforce that oral agreement. (*Id.* at ¶ 6.) As executrix, she requests that the court authorize the execution and consummation of the transactions outlined in the Partnership Agreement and the Subscription Agreement. (*Id.* at ¶ 7.) Additionally, she states that there are insufficient liquid assets in Threefoot's estate to fully fund the Partnership and satisfy all current expenses, including estate taxes. (*Id.* at ¶ 13.) She requests that the court authorize the sale of an apartment located at 585 South Greer in Memphis, Tennessee (the "Memphis real estate") so that the proceeds can be used to satisfy those obligations. (*Id.* at ¶¶ 14–16.)

The petition's prayer for relief includes:

1. That Petitioner, as Executrix of the Estate, be authorized to execute both the Partnership Agreement and Subscription Agreement on behalf of the Estate to fulfill the obligations of the decedent.

2. That Petitioner, as Executrix of the Estate, be authorized to transfer title to the real property, cash, securities and bonds described in the Subscription Agreement to the Partnership.

3. For a determination that the lien arising under 26 U.S.C. § 6324(a)(1) applies to the 99% limited partnership interest of the Partnership which is part of the decedent's probate estate rather than to the property to be contributed to the Partnership pursuant to the terms of the Subscription Agreement because of the prior claim of the Partnership under T.C.A. § 61–2–502(a).

4. That the real estate described in Paragraph 12 be sold on such terms as the Petitioner may deem proper and that the proceeds of the sale be used to fund the Partnership with the balance to be applied in due course of administration to the payment of all costs of administration, including attorneys' fees

and all just and lawful claims against the decedent's estate; and any remaining balance be distributed to the Petitioner as soon as practicable.

(Pet. at 4.)

The United States filed a notice of removal asserting that the court has subject-matter jurisdiction in this case under 28 U.S.C. § 2410(a)(1) because it affects property on which the United States has a lien. Miller filed a motion to remand, arguing that § 2410 does not give rise to federal jurisdiction because she does not contest the legality of any procedures used by the United States to collect a tax lien. Miller also argues that the probate exception to federal jurisdiction applies in this case. If her motion is granted, she seeks an award of attorney's fees under 28 U.S.C. § 1447(c). The government filed a brief in opposition on November 13, 2003.

## II. Federal Question Jurisdiction

■ When a federal court lacks subject-matter jurisdiction over an action that has been removed, it should remand the case to state court. 28 U.S.C. § 1447(c). The party seeking removal bears the burden of establishing that federal jurisdiction exists. *Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 453–54 (6th Cir.1996). "Due regard for state governments' rightful independence requires federal courts scrupulously to confine their own jurisdiction to precise statutory limits." *Id.* at 454.

The government contends that this court has federal question jurisdiction under the quiet title provision of the Judiciary Code, which provides in part:

[T]he United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—(1) to quiet title to . . . real or personal

property on which the United States has or claims a mortgage or other lien.

28 U.S.C. § 2410(a). The government asserts that it has a federal estate tax lien against the gross estate of Threefoot, which arose under 26 U.S.C. § 6324[1] on the date of her death.

A related statute, 28 U.S.C. § 1444, provides:

> Any action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending.

Miller argues that her petition is not an action to quiet title within the meaning of § 2410, although her petition does state that the United States should be joined as a party under § 2410 "for the purpose of quieting title to the property that the decedent agreed to transfer to the Partnership." (Pet. at ¶ 11.) Rather, she seeks to determine the property that is subject to the federal estate tax lien. In other words, among other relief, she seeks to determine whether certain property is part of the gross estate. The United States characterizes the action as follows: "the Court need only determine if an alleged oral contract and a family limited partnership are valid." (Govt.'s Brief in Opp'n at 6.)

In support of her argument, Miller cites *Walters v. Schmidt*, 1979 WL 1376 (E.D.Mo. March 14, 1979). In *Walters*, the plaintiff brought suit in Missouri state court to contest the probate of her husband's will. *Id.* at *1. She alleged that a determination about the validity of the will would affect the amount due to the United States under 26 U.S.C. § 6324. *Id.* The United States removed the case to federal court. The court dismissed the action for lack of subject matter jurisdiction, finding that "[i]n order for the United States to be a proper party to this will contest under 28 U.S.C. § 2410(a), the plaintiff's allegations must relate to the legality of the procedures used by the United States to enforce the tax lien and not to the validity of the tax assessment itself." *Id. See also Aqua Bar & Lounge, Inc. v. United States Dep't of Treasury Internal Rev. Serv.*, 539 F.2d 935, 939–40 (3d Cir.1976) (stating that § 2410 is a waiver of sovereign immunity to a suit brought by a taxpayer against the United States which challenges the validity of a federal tax lien and sale "so long as the taxpayer refrains from contesting the merits of the underlying tax assessment itself").

In *Walters*, the court noted that the § 6324 lien attaches to all assets of the gross estate, and that the lien would be valid regardless of the will contest. "The effect of the will contest is only to determine which assets are includable in the gross estate to which the lien attaches." 1979 WL 1376 at *1. Therefore, the court dismissed the action for lack of subject-matter jurisdiction. *Id.*

In a later case, *Wieland v. Savetz*, 734 F.Supp. 409 (E.D.Mo.1990), the court reached a similar result. In *Wieland*, the plaintiffs filed suit in state court seeking a declaration as to the proper construction of a testamentary trust. *Id.* at 409. They joined as a defendant the Commissioner of the Internal Revenue Service, who re-

---

**1.** Twenty-six U.S.C. § 6324(a)(1) provides:

Unless the estate tax imposed by chapter 11 is sooner paid in full, or becomes unenforceable by reason of lapse of time, it shall be a lien upon the gross estate of the decedent for 10 years from the date of death, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien.

moved the case to federal court. *Id.* The plaintiffs sought no affirmative relief from the Commissioner, but joined him as a defendant because Internal Revenue Service agents had raised the controversy regarding the interpretation of the trust by disallowing a marital deduction with respect to the trust estate. *Id.* The court remanded the action to state court, stating:

> Upon reviewing plaintiffs' complaint, the Court concludes that plaintiffs seek a declaration of the proper construction of a testamentary trust under state law. Although this determination may have resulting tax implications, plaintiffs do not seek a determination of federal tax liability nor is such a determination necessary to their state law cause of action. The mere fact that the Commissioner, a federal official, has been named as a defendant herein does not provide a basis for the exercise of federal question jurisdiction.

*Id.* at 410.

■ Miller argues that hers is not an action to quiet title. Quiet title actions have been defined as those seeking "a determination that a tax lien does not exist, has been extinguished, or is inferior in rank." *Estate of Johnson v. United States,* 836 F.2d 940, 946 (5th Cir.1988) (citation and emphasis omitted). Miller's action seeks enforcement of an alleged oral agreement, authorization to sell certain property, and a determination as to what property is subject to the § 6324 lien. Although Miller stated in her petition that she sought to quiet title to certain property, that statement does not give rise to federal jurisdiction if § 2410 does not in fact apply to her action. *See Walters,* 1979 WL 1376, at *1 (finding that no subject matter jurisdiction existed although the plaintiff cited § 6324 and joined the United States as a party pursuant to § 2410).

This case does not involve the types of actions described in *Johnson.* Rather, in this case, as in *Walters* and *Wieland,* the resolution of the state law issues will determine whether certain property is included in the gross estate, which in turn affects the amount of federal estate tax, if any, owed. Miller seeks no affirmative relief from the United States. The United States has not satisfied its burden of demonstrating that federal subject matter jurisdiction exists.

The government's argument that the plain language of § 1444 demands a different result is unavailing. Twenty-eight U.S.C. § 1444 states, "*Any* action brought under § 2410 against the United States in any State court may be removed..." The United States argues that the word "any" precludes Miller's argument that she is not challenging the validity of the federal estate tax lien. However, because the court agrees that Miller is not challenging the validity of the federal estate tax lien, this case is not an action to "quiet title" within the meaning of § 2410, and § 2410 does not give rise to federal jurisdiction. This case, therefore, is not properly described by the phrase "any action brought under § 2410," and this court lacks subject matter jurisdiction.

### III.  Probate Exception

■ Alternatively, even assuming that Miller's probate court petition did raise a federal question, it would be inappropriate for this court to consider the case because of the probate exception to federal jurisdiction, which extends to matters that would require a federal court to interfere with the probate of an estate. *See, e.g., Bedo v. McGuire,* 767 F.2d 305, 306 (6th Cir.1985) ("It is well settled that federal courts have no probate jurisdiction."); *Mangieri v. Mangieri,* 226 F.3d 1, 2–3 (1st Cir.2000) ("As a general matter, courts

tend to view the probate exception as extending to all suits 'ancillary' to the probate of a will.") (internal quotation omitted). In *Markham v. Allen*, the Supreme Court stated that "a federal court has no jurisdiction to probate a will or administer an estate, the reason being that the equity jurisdiction conferred by the Judiciary Act of 1789...did not extend to probate matters." 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946). "[F]ederal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Id.* (internal quotations omitted, citing *Waterman v. Canal–Louisiana Bank & Trust Co.*, 215 U.S. 33, 43, 30 S.Ct. 10, 54 L.Ed. 80 (1909)).

■ There are several policy reasons underlying the probate exception to federal jurisdiction. *See Dragan v. Miller*, 679 F.2d 712, 714 (7th Cir.1982). First, it promotes legal certainty by limiting probate matters to one court system. "Certainty is desirable in every area of the law but has been thought especially so with regard to the transfer of property at death." *Id.* Second, it promotes judicial economy. The disposition of a decedent's assets normally begins in state court, and the probate exception "serves to preserve the resources of both the federal and state judicial systems and avoids the piecemeal or haphazard resolution of all matters surrounding the disposition of the decedent's wishes." *Storm v. Storm*, 328 F.3d 941, 944 (7th Cir.2003). Third, the state probate courts have more expertise in deciding probate questions. "Because state courts have nearly exclusive jurisdiction over probate matters, state judges

vested with probate jurisdiction develop a greater familiarity with such legal issues." *Id.* A final, related reason for the probate exception is to avoid unnecessary interference with state courts: "if state courts have the exclusive task of probating a will, and thus develop the relative expertise to do so (including the expertise to deal with all matters ancillary to probate), then federal court resolution of such matters is...an unnecessary interference with the state system." *Id.*

■ The government, in its opposition, argues that the probate exception applies only to cases that are in federal court based on diversity jurisdiction rather than those in which a federal question exists. Assuming that a federal question exists in this case, it is nevertheless appropriate to consider the probate exception. The exception is frequently referred to as the "probate exception to diversity jurisdiction." *See, e.g., id.* at 947; *Mangieri*, 226 F.3d at 2. The United States is not correct, however, in its statement that "with only one exception..., no court with federal question jurisdiction has even considered the probate exception." (Govt.'s Brief in Opp'n at 4, citing *Marshall v. Marshall*, 264 B.R. 609 (C.D.Cal.2001) as the exception.) The probate exception is not limited to diversity cases. *Markham* itself involved a federal question: "It is not denied that the present suit is...brought by an officer of the United States, authorized to sue, of which district courts are given jurisdiction [under section 41] of the Judicial Code, 28 U.S.C. § 41(1)." *Markham*, 326 U.S. at 493, 66 S.Ct. 296. The Supreme Court proceeded to consider whether the probate exception should apply. In *Tonti v. Petropoulous*, 656 F.2d 212, 215 (6th Cir.1981), the Sixth Circuit discussed the probate exception in a case brought under 42 U.S.C. § 1983, in which the plaintiff asked the district court to grant him relief

he was denied in the state probate court. The Sixth Circuit, citing *Markham* and other cases, held that "[t]he district court clearly had no jurisdiction as to these matters." *Id.* Additionally, a district court in Illinois held that the probate exception applied in a case involving the federal Employee Retirement Income Security Act of 1974 ("ERISA"). *In re Estate of Lewis,* 128 F.Supp.2d 573, 574 (N.D.Ill.2001). It stated that claimed ERISA preemption "does not trump...the long-established probate exception to all other potential sources of federal jurisdiction." *Id.* The *Lewis* court further stated:

Although the doctrine is often referred to in its most common incarnation as "the probate exception to federal diversity jurisdiction" (*Dragan,* 679 F.2d at 713), the quoted pronouncement in *Markham* is more sweeping than that. Its statement that federal jurisdiction over estate administration is totally absent also equates to the principle that such administration presents no federal question that could confer such jurisdiction.

*Id.* 574 n. 3. *Cf. In re Brumfield,* 1998 WL 834999, at *2–3 (M.D.La.1998) (considering probate exception although the court "clearly" had subject matter jurisdiction under 28 U.S.C. § 1331; limiting its jurisdiction to those questions that did not require the court to order the transfer of property under the probate court's control). In view of those authorities, the court is unpersuaded by the government's argument that the probate exception should not be considered in a case involving a federal question.

■ A two-part inquiry governs whether the probate exception applies to bar Miller's suit from federal court. The first question is whether the court is being asked to probate a will or administer an estate. The second question is whether entertaining the action would cause the court to interfere with the probate proceedings or assume general jurisdiction or control of property in custody of the state court. *Moser v. Pollin,* 294 F.3d 335, 340 (2d Cir.2002). If the answer to either question is yes, the case should be remanded for lack of subject matter jurisdiction. The "interference prong" is "the workhorse of the probate exception." *Id.*

The *Moser* court stated that the first question, whether the court is being asked to probate a will or an administer an estate directly, is rarely answered affirmatively, "since few practitioners would be so misdirected as to seek, for example, letters testamentary or letters of administration from a federal judge." *Id.* The same is true here; the first test is not met because Miller's action is not a "purely probate" matter.

The second question is whether the court is being asked to interfere with the probate proceedings, to assume general jurisdiction of the probate, or to assume control of property in the custody of the state court. If any of those three situations exists, the probate exception applies and the action should be remanded.

Miller's petition seeks resolution of three questions: (1) whether the alleged oral agreement between Threefoot and Miller is enforceable, (2) whether Miller may sell the Memphis real estate in order to satisfy the estate's obligations, and (3) whether the property Threefoot allegedly agreed to transfer to the Partnership is part of her gross estate. The first question is a contract question that merely involves an estate, and it is the sort of question that federal courts can answer despite the probate exception where jurisdiction exists. *See Markham,* 326 U.S. at 494, 66 S.Ct. 296 (noting that federal courts can entertain suits in favor of claimants against an estate to establish their

claims). The second question presented by Miller's petition, however, is much more closely related, to the probate proceeding in that it asks the court to order the sale of an asset of the estate. In requesting that the court authorize the sale of the Memphis real estate, Miller does not seek to determine the rights of a specific creditor, legatee, or heir. Rather, she asks that the court authorize the transfer of that property in order that its proceeds be used to pay "all costs of administration, including attorneys' fees and all just and lawful claims against the decedent's estate." Deciding whether to authorize the sale of real estate in Threefoot's estate would require the court to interfere with the probate proceedings, in the sense that this court would be directing disposition of the estate's assets. *See Torelli v. Torelli*, 941 F.Supp. 36, 39 (S.D.N.Y.1996) (holding that probate exception applied to bar suit seeking to clear title to real estate and arrange for its sale); *cf. Ashton v. Josephine Bay Paul and C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1072 (2d Cir. 1990) ("[T]he Supreme Court has regularly rebuked the few efforts of lower federal courts to take over, generally, the administration of a decedent's estate, including the exercise of otherwise proper jurisdiction over the accounting of an estate.") (internal quotations and citations omitted). Therefore, as an alternate ground for remanding the suit, the probate exception applies to bar this court from exercising jurisdiction.

The government argues that the issues presented by Miller will not interfere with the probate of Threefoot's estate. (Govt.'s Opp'n at 6–7.) It states that "[n]o party is contesting the will itself or any bequest made pursuant to the will. Moreover, Miller alleges that the real property at issue is not even part of the decedent's estate. To the contrary: she alleges that the decedent transferred the property before her death into a family limited partnership." (*Id.*) However, Miller does seek to sell real property in Threefoot's estate (the Memphis real estate), which is separate from the real property she contends Threefoot agreed to transfer to the Partnership (the Perry County real estate).

The government also argues that the probate exception does not apply to disputes over will substitutes, such as trusts. That argument is not supported by case law. *See Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir.2003) ("the probate exception applies to disputes about trusts used in lieu of wills, if the parties present an issue that would be resolved in probate had a will been used, or the issue is ancillary to such a dispute"); *Storm*, 328 F.3d at 947 ("Given the growth in recent years of various 'will substitutes,' we are loath to throw open the doors of the federal courts to disputes over testamentary intent simply because a decedent chose to use a will substitute rather than a traditional will to dispose of his or her estate."); *Georges v. Glick*, 856 F.2d 971, 974 n. 2 (7th Cir.1988) (rejecting argument that probate exception was inapplicable because the action related to an inter vivos trust rather than a will). The single case cited by the government in support of its argument, *Beattie v. J.M. Tull Foundation*, 941 F.Supp. 57, 59 (D.S.C.1996), is distinguishable. In *Beattie*, a trustee brought suit seeking a declaratory judgment that the terms of a testamentary trust permitted him to distribute the entire capital gain of the trust to the life tenant. *Id.* at 958. The court acknowledged that the distribution of the trust's assets was tangentially related to administration of the estate, but the court held that the action was not barred by the probate exception because it did not require the court "to disturb possession of an estate properly in the hands of a state probate court. Presumably, af-

ter thirty years, the estate has already been administrated and closed." *Id.* at 959. In this case, by contrast, the probate estate remains open and its assets are subject to the jurisdiction of the Shelby County Probate Court. (Mem. in Supp. of Mot. to Remand at 5.) Considering the facts of this case and the case law applying the probate exception, the court finds that the exception applies here and warrants remand of the action to the Shelby County Probate Court.

## IV. Attorney's Fees

 Miller seeks an award of attorney's fees expended in preparing the motion to remand and supporting memorandum, and she has provided the affidavit of her attorney setting forth the amount requested. Twenty-eight U.S.C. § 1447(c) authorizes such an award. It states that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The statute " 'affords a great deal of discretion in fashioning awards of costs and fees.' " *Morris v. Bridgestone/Firestone, Inc.,* 985 F.2d 238, 240 (6th Cir.1993) (quoting *Morgan Guar. Trust Co. v. Republic of Palau,* 971 F.2d 917, 923–24 (2d Cir.1992)). In making the determination whether to award fees, courts apply a test of "overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." *Morgan,* 971 F.2d at 924 (quoting and affirming district court's order). A showing of bad faith is not necessary to support an award of attorney's fees, and there is no allegation that either party in this case has acted in bad faith. The notice of removal and the motion to remand both involved complex and close legal questions, and it was not unreasonable for the United States to remove the action. Considering those circumstances,

the court denies Miller's request for attorney's fees.

## V. Conclusion

For the foregoing reasons, Miller's motion to remand is GRANTED and this action is remanded to the Shelby County Probate Court. The Clerk shall mail a certified copy of this order to the Clerk of the Shelby County Probate Court, in accordance with 28 U.S.C. § 1447(c). Miller's request for attorney's fees is DENIED.