*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0024p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

JANE P. EVANS,

*Plaintiff-Appellant,*

*v.*

No. 04-2229

PEARSON ENTERPRISES, INCORPORATED, a Michigan
Corporation; ERVIN INDUSTRIES, INCORPORATED, a
Michigan Corporation; BANK ONE TRUST COMPANY
N.A.; BANK ONE NATIONAL ASSOCIATION; JOHN
PEARSON, an individual; JAMES MERETTA, an
individual,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-74821—Avern Cohn, District Judge.

Argued: October 27, 2005

Decided and Filed: January 19, 2006

Before: SILER, CLAY, and ROGERS, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Dominic J. Campisi, EVANS, LATHAM & CAMPISI, San Francisco, California, for
Appellant. I. W. Winsten, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, for
Appellees. **ON BRIEF:** Dominic J. Campisi, EVANS, LATHAM & CAMPISI, San Francisco,
California, Donald J. Gasiorek, James N. McNally, SOMMERS, SCHWARTZ, SILVER &
SCHWARTZ, Southfield, Michigan, for Appellant. I. W. Winsten, HONIGMAN, MILLER,
SCHWARTZ & COHN, Detroit, Michigan, Bruce T. Wallace, Susan T. Cannell, HOOPER,
HATHAWAY, PRICE, BEUCHE & WALLACE, Ann Arbor, Michigan, for Appellees.

ROGERS, J., delivered the opinion of the court, in which SILER, J., joined. CLAY, J. (pp.
12-14), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

ROGERS, Circuit Judge.   This diversity action concerns claims for breach of trust, shareholder oppression, and common-law fraud and misrepresentation as governed by Michigan law. It also presents an interesting federal question as to the breadth of the "probate exception" to federal jurisdiction.  Plaintiff Jane Evans has an interest in three trusts, whose primary assets are voting and nonvoting stock in Ervin Industries, a family-owned corporation.  Evans' family members, who have interests in two of the three trusts, are the other beneficiaries of the voting-stock trust.  In 2001, Evans sued her siblings, the trust company defendant Bank One, and defendant Ervin Industries in Michigan probate court.  The essence of her claim was that Bank One's lending relationship with Ervin Industries caused Bank One to have a conflict of interest and abdicate its responsibilities as trustee in the course of three business transactions, occurring in 1993, 1996, and 1999.  The probate court dismissed her suit, and the Michigan Court of Appeals recently affirmed.

Before the probate court dismissed her suit, Evans brought similar claims in federal district court.  She alleged tortious conduct in connection with the same three business transactions and sued Ervin Industries, Pearson Enterprises, Bank One Trust Company, Bank One N.A., her brother John Pearson, and Bank One trust officer James Meretta.  The district court dismissed all of her claims in response to defendants' motions to dismiss.  The district court held that the "probate exception" to federal jurisdiction divested it of jurisdiction to entertain Evans' claim for breach of trust.  The court dismissed all of Evans' other claims on grounds of collateral estoppel or inadequate pleading. The lower court also refused or declined to consider Evans' requests to amend her complaint.  Evans appeals, challenging (1) the dismissal of her claims for breach of trust, shareholder oppression, and fraud; and (2) the denial of her request to amend her complaint.  For the following reasons, we affirm.

**I.**

In reviewing the grant of a motion to dismiss under Rule 12(b)(6), we "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff."  *E.g.*, *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 605 (6th Cir. 2005).  Doing so, we conclude that dismissal was proper, in part, on collateral estoppel grounds and, in part, for failure to plead with sufficient particularity.

*1.     The Trusts and the Parties*

There are three trusts involved in this litigation.  Two of these trusts are testamentary.  The first testamentary trust was created by John Ervin, who founded defendant Ervin Industries, which manufactures steel abrasives.  Ervin Industries is a Michigan corporation with its principal place of business in Michigan, and Ervin's grandson, defendant John Pearson, is its current president, CEO, and director.  The primary asset of Ervin's testamentary trust was Ervin Industries' Class A voting stock.   His daughter and four grandchildren are the income beneficiaries, and two of those grandchildren, plaintiff Evans and defendant Pearson, are parties to this suit.  This substantial trust was divided into five separate trusts in 1987 so that each beneficiary had his or her own trust.  The second testamentary trust was established by Ervin's wife, and its primary asset was the remaining Class A voting stock in Ervin Industries.  Evans and her siblings have beneficial interests in this testamentary trust as well.

The final trust at issue in this case is not testamentary.  Evans established her own revocable trust in 1995.  The res of the revocable trust is Class B nonvoting stock in Ervin Industries.  Evans named herself the income beneficiary of her revocable trust and another trust company as the

remainder beneficiary of any trust property in existence at her death. Because Evans' trust is revocable, she concedes that she has control over the trust.

Defendant Bank One Trust Company N.A. (Bank One Trust) is the sole trustee of the testamentary trusts. Therefore, Bank One Trust controls all of the Class A voting stock in Ervin Industries by acting as trustee of all shareholder-voting rights. Bank One Trust was also the co-trustee, along with Evans, of the revocable trust. Defendant James Meretta is employed as a trust officer for Bank One Trust, and he also serves on the board of directors of both defendants Pearson Enterprises and Ervin Industries. The district court found that Meretta was the trust officer for the revocable trust. It is unclear from the record whether he is also the trust officer for the other trusts. Bank One Trust, Bank One, and Meretta have the same counsel and are referred to collectively as the "Bank One defendants."

Pearson Enterprises was incorporated in Michigan in 1993 and has its principal place of business there. Pearson Enterprises was a participant in two of the three transactions at issue in this case. John Pearson is also the president, CEO, and director of Pearson Enterprises. John Pearson, Pearson Enterprises, and Ervin Industries have the same counsel and are referred to collectively as the "Pearson defendants."

2.      *The Three Business Transactions at Issue*

Evans' claims arise out of three business transactions. The first transaction was a 1993 acquisition of Barton Abrasives, a company located in the United Kingdom, for $17.65 million. The defendants created a limited partnership to complete this transaction. The general partner was the then-newly incorporated Pearson Enterprises, and the limited partner was Ervin Industries. Evans purchased more than 25,000 shares of stock in Pearson Enterprises with over $1.5 million that she had received in trust distributions. Evans alleges that she ultimately lost all of this investment. Evans' complaint alleged that the defendants had false valuation reports prepared, made false descriptions of write-offs, charged her an excessive price in the acquisition, failed to supervise agents, failed to perform due diligence, concealed material facts, and negotiated unreasonably. Evans alleged that Bank One and Meretta approved this transaction. She also alleged that the defendants concealed their misrepresentations until 2001.

The second transaction was Ervin Industries' and Pearson Enterprises' 1996 acquisition of a 40% interest in Ervin Leasing Company from Great Lakes Bancorp. Evans alleged that she purchased an additional $500,000 worth of Pearson shares to help finance the acquisition. According to her complaint, she invested her $500,000 "directly and through" her revocable trust. Evans alleges that she also lost this entire investment because of the defendants' misrepresentations and concealment. She also alleged that the defendants failed to disclose that the acquisition was a "poor investment" and that Evans would not receive "dividend income for the foreseeable future." Her allegations continue that the defendants failed to engage in due diligence and that Bank One failed to inform her of its conflict of interest, which resulted from its and its affiliates' loans to Ervin Leasing Company. Evans again alleged that the defendants concealed the misrepresentations until 2001.

The final transaction at issue is Ervin Industries' 1998 acquisition of the Barnsteel Company for $15 million. Evans alleged that Bank One Trust and Meretta failed to perform due diligence, disclose that the terms of the transaction were unreasonable and imprudent, and disclose that Bank One Trust had a conflicting lending relationship. Barnsteel's closure in 2001 resulted in a substantial loss to Ervin Industries and to the value of Evans' stock. Evans has not alleged that she invested any of her own money in this transaction.

### 3.    *Procedural History*

Evans first brought suit in Michigan probate court on August 31, 2001, for the removal and surcharge of Bank One Trust as the trustee of the testamentary trusts. Ervin Industries and John Pearson were also parties to the suit. In connection with the three transactions described above, Evans alleged that she suffered substantial lost income because Bank One Trust (1) had a conflict of interest due to its lending relationship with Ervin Industries, (2) failed to perform due diligence, and (3) administered the trusts in contravention of its fiduciary duties. The parties filed cross-motions for summary judgment.

The probate court, on December 30, 2003, ruled in favor of Bank One Trust. The probate court held that Bank One Trust's loans to Ervin were proper under Michigan law. That court also determined that Evans' claims were barred by the applicable statutes of limitation and by principles of res judicata because the probate court had entered orders approving Bank One's accounts. As for Evans' argument that the statute of limitations should be tolled because of fraudulent concealment, the probate court held that she failed to allege fraud or fraudulent concealment in her petition and that, in any case, she had notice of the significant transactions years before filing suit. Evans appealed, and the Michigan Court of Appeals affirmed on February 24, 2005. *See Evans v. Bank One Trust Co. N.A.*, Nos. 249974, 253745, 253824, 2005 WL 433573 (Mich. Ct. App. Feb. 24, 2005). The Michigan Supreme Court recently denied leave to appeal. *See In re John F. Ervin Testamentary Trust*, 706 N.W.2d 14 (Mich. Nov. 9, 2005) (Table).

Evans filed the case at bar in the district court below on November 26, 2003. She brought seven state-law claims relating to the three business transactions: (1) improper discharge of corporate duties in violation of M.C.L. § 450.1541a, (2) shareholder oppression under M.C.L. § 450.1489, (3) breach of trust, (4) fraud, (5) silent fraud, (6) innocent misrepresentation, and (7) civil conspiracy. On April 30, 2004, the district court, in response to the defendants' motion to dismiss, dismissed most of Evans' claims.

First, the court dismissed the claim for improper discharge of corporate duties because the statute of limitations had run. Second, the court dismissed the shareholder-oppression claims based on the 1993 Barton Abrasives and 1996 Ervin Leasing transactions because the applicable statute of limitations had run against Evans. The court held, however, that Evans met the limitations period regarding her claim based on the 1998 Barnsteel transaction. Third, the court held that the "probate exception" to federal subject-matter jurisdiction deprived the court of jurisdiction to hear Evans' claim for breach of trust. Fourth, the district court disposed of the fraud and misrepresentation claims together and determined that the statute of limitations barred the claims concerning the 1993 Barton Abrasives and 1996 Ervin Leasing transactions. The court also determined that Evans had not pled sufficient facts of fraudulent concealment to toll the statute, and, even if she had, she failed to qualify for Michigan's two-year grace period in the case of fraudulent concealment because she should have discovered the concealment by the time she filed her 2001 probate action. Fifth, the district court dismissed her fraud claim concerning the 1998 Barnsteel transaction, but the court did not expressly state its rationale. Presumably the court accepted the defendants' argument, which the court described in its order, that Evans failed to plead reliance. Finally, the court allowed her claim for civil conspiracy to proceed because "at least one of [her] other claims (Count Two) survives . . . ."

The filings leading up to the district court's order included one styled "Plaintiff's Response to the Ervin Defendants' Motion to Dismiss . . . and Plaintiff's Counter-Motion for Leave to Amend." The "counter-motion" stated in its entirety, "In the alternative, Plaintiff respectfully moves this Court to grant her Counter-Motion for Leave to Amend her Complaint and Jury Demand pursuant to Fed. R. Civ. P. 15." The district court denied the motion "as futile" because Evans had

not offered an amended complaint or specifically stated how the amendments would create causes of action that could survive the limitation periods or the court's limited jurisdiction.

On August 26, 2004, the district court considered the remaining claims for shareholder oppression and civil conspiracy concerning the 1998 Barnsteel transaction. The Pearson defendants brought a motion to dismiss. The Bank One defendants submitted a motion for summary judgment.

The district court dismissed both of the remaining claims on August 26, 2004, pursuant to the motion to dismiss. The court held that Evans could not satisfy any of the statutory requirements for a claim of stockholder oppression under M.C.L. § 450.1489. The court first held that the probate court's earlier order collaterally estopped Evans from arguing that the defendants' lending relationship was illegal. The court then held that Evans' shareholder claim was defective because, without investing in the Barnsteel transaction, she could not plead reliance. Last, the court held that Evans could not maintain a claim for "willfully unfair and oppressive acts" because she was collaterally estopped from arguing that Bank One acted illegally and because she failed to plead a separate and distinct injury regarding the Barnsteel transaction. Because the court had determined that all other claims had to be dismissed, it ruled that Evans' conspiracy claim failed as a matter of law.

In two filings styled "Response,"[1] each accompanied by a brief, Evans provided the following short request: "In the alternative, Plaintiff respectfully moves this Court to grant her Counter-Motion for Leave to Amend her Complaint and Jury Demand pursuant to Fed. R. Civ. P. 15." An amended complaint was attached as an exhibit to Evans' response to the Ervin defendants' motion to dismiss, but it was only mentioned on page ten and in footnote five of her brief. The parties disagree as to whether Evans' request constituted a "motion." In the section of its opinion denying the remaining motions, the court did not mention Evans' requests for leave to amend. The district court mentioned in a footnote to its order that it would not consider any of Evans' references to her proposed amended complaint because the court determined that Evans was attempting to "circumvent the Court's [earlier] Order" denying her original, general request for leave to amend.

On appeal, Evans challenges the district court's rulings as to her claims for breach of trust, shareholder oppression, and common-law fraud. She also challenges the district court's denial of her requests for leave to amend.

The district court properly dismissed all of Evans' claims. Although the district court had federal subject-matter jurisdiction to decide whether Bank One breached its fiduciary duties, Evans' claim was properly dismissed because she is collaterally estopped from arguing fraudulent concealment and thus that her claim survives the applicable statute of limitations. Evans' shareholder claims based on the 1993 and 1996 transactions are barred by the statute of limitations because Evans failed to plead fraudulent concealment with particularity and because collateral estoppel bars Evans from arguing fraudulent concealment. Her shareholder-oppression claim concerning the 1998 transaction also fails because collateral estoppel precludes her from alleging the facts that support her claim. Evans' fraud claims concerning the 1993 and 1996 transactions fail because, as she did not plead fraudulent concealment with particularity, she cannot satisfy the statute of limitations. Her fraud claim relating to the 1998 transaction fails because she did not plead reliance with particularity. Finally, the district court did not improperly deny Evans' requests for leave to amend.

---

[1]The response to the Ervin defendants' motion to dismiss was styled "Plaintiff's Response to the Ervin Defendants' Motion to Dismiss and for Summary Judgment on Counts II and VII." The other response was styled "Plaintiff's Response to the Bank One Defendants' Motion for Summary Judgment."

## II.

We review de novo the district court's order to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). We must accept Evans' factual allegations as true and construe all reasonable inferences in her favor. *See id.* On the other hand, this liberal standard of review requires more than recitation of bare legal conclusions.[2] *Id.*

## III.

The district court had jurisdiction to decide Evans' claim against the Bank One defendants for breach of trust because the "probate exception" is not applicable to Evans' claim. Evans' claim involves only an action in personam regarding her revocable trust, an inter vivos trust that is unrelated to any probate proceedings. The probate exception to federal jurisdiction is defined by federal law. The Supreme Court, appropriately, has shaded its contours. In *Markham v. Allen*, the key Supreme Court case on the subject, the Supreme Court explained that the equity jurisdiction of the courts does not extend to claims requiring (1) interference with probate proceedings, (2) assumption of general jurisdiction over probate, or (3) assumption of control over property in the custody of a state court. 326 U.S. 490, 494 (1946). Because Evans' claim does not require the federal court to interfere with probate proceedings, assume general jurisdiction over probate, or assume control over property in the custody of a state court, the district court has jurisdiction to consider her claim.

Evans' claim for breach of inter vivos trust does not concern probate issues and therefore does not interfere with any probate matters. First, Evans' claim does not interfere with any probate proceedings because it concerns business transactions and stock that are not tied to any probate proceedings. She did not place her nonvoting stock into trust until 1995, and the administration of the revocable trust has no relation to any decedent or decedent's estate. Unlike other cases in which courts have found interference, Evans' claim is not a disguised probate claim. *See Marshall v. Marshall*, 392 F.3d 1118, 1135 (9th Cir. 2004), *cert. granted*, 74 U.S.L.W. 3199 (U.S. Sept. 27, 2005) (No. 04-1544) (declaring the plaintiff's claim a "thinly veiled will contest"); *Storm v. Storm*, 328 F.3d 941, 945 (7th Cir. 2003) (same). That the claim Evans brought in federal court shares similar facts and allegations with her earlier claims regarding her interest in the testamentary trusts is insufficient to demonstrate that her claim in federal court *interferes* with probate proceedings. The question is not of similarity but of interference; Bank One proffers no explanation of how the exercise of federal jurisdiction will obstruct the state probate court.

Second, the district court would not assume general jurisdiction over probate by hearing Evans' claim. Evans' claim does not require the court to administer an estate, evaluate the validity of a document, or determine the rights of interested parties to property. Because no general probate is occurring or envisioned regarding this claim, this is not a case of the district court's usurping the general jurisdiction of the probate court.

Last, Evans' action is in personam and does not require the federal court to take custody of any property already in state custody. Because the revocable trust has never, as far as the record demonstrates, been the subject of any litigation or other legal proceedings, the state courts have no custody of any property in the revocable trust. But even if the state courts had property in custody, there is no conflict over the custody of trust property because Evans has not brought an action in rem or quasi-in-rem, asking the federal court to take custody of property away from state court to

---

[2] Although a motion for summary judgment was before the district court regarding the shareholder-oppression claim concerning the 1998 transaction, the court based its dismissal of all claims on the motion to dismiss. Thus, this court is not reviewing a decision of summary judgment, and Evans' arguments concerning whether she created a genuine issue of material fact and whether she is entitled to discovery are misplaced.

determine the rights of interested parties in that property. In *Rogers v. Girard Trust Co.*, 159 F.2d 239, 242 (6th Cir. 1947), we held that the probate exception did not extend to an in personam action for breach of a testamentary trust where the action did not affect the possession of property already in the control of the probate court. Evans' claim, accordingly, implicates none of *Markham*'s three forbidden infringements on exclusively state probate jurisdiction.

To argue, as Bank One does obliquely, that state legislation always defines the boundaries of the probate exception, and thus federal jurisdiction, would contravene *Markham* and misinterpret precedent from this circuit that is wholly consistent with *Markham*. Bank One contends that federal courts have no jurisdiction to hear Evans' claim for breach of trust because this circuit has examined a probate court's exclusive jurisdiction when mapping the contours of the probate exception and because Michigan law places issues regarding all trusts (not simply testamentary trusts) within the exclusive jurisdiction of the probate court, *see* M.C.L. § 700.1302(b). Although this court has held that "[t]he standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court," *Lepard v. NBD Bank*, 384 F.3d 232, 237 (6th Cir. 2004) (citing *McKibben v. Chubb*, 840 F.2d 1525, 1529 (10th Cir. 1988)),[3] this court has examined the exclusive jurisdiction of probate courts only when a claim concerned a decedent's estate. *See, e.g.*, *Bedo v. McGuire*, 767 F.2d 305 (6th Cir. 1985); *Starr v. Rupp*, 421 F.2d 999, 1005 (6th Cir. 1970). These examinations of probate jurisdiction are consistent with *Markham* because we were ensuring that federal jurisdiction did not interfere with probate administration. Because the Supreme Court, in determining that a suit could proceed despite its relationship with estate administration, held that federal equity jurisdiction cannot be "curtailed by state legislation as to its [the state's] own courts," *Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33, 45-46 (1909), it follows that state legislatures cannot circumscribe federal jurisdiction over trusts. *See Golden v. Golden*, 382 F.3d 348, 360 (3d Cir. 2004).

Trusts as a general matter have historically been subject to federal jurisdiction, and "[m]any, if not most, courts have held that the probate exception does not apply to actions involving trusts." *Sianis v. Jensen*, 294 F.3d 994, 999 (8th Cir. 2002); *see also* Peter Nicolas, *Fighting the Probate Mafia: A Dissection of the Probate Exception to Federal Court Jurisdiction*, 74 S. Cal. L. Rev. 1479, 1493 & n.70 (2001). Congress granted federal courts jurisdiction over suits that could have been brought in that English chancery court, *see* Nicolas at 1500, and, in colonial times, the English High Court of Chancery had exclusive jurisdiction over trusts, *see id.* at 1513-14. In contrast, the probate exception exists, in part, because probate matters, as opposed to trusts, were not heard in the English High Court of Chancery or common-law courts. *See Markham*, 326 U.S. at 494.

Although it is true that federal courts have properly applied the probate exception to claims concerning trusts that act as will substitutes, the revocable trust in this case is not a will substitute. Refusing to hear cases regarding will substitutes is consistent with *Markham* because adjudication concerning will substitutes would frequently interfere with probate administration. The cases to which Bank One refers for the proposition that federal courts do not have jurisdiction to hear any claim regarding inter vivos trusts involve deaths and trusts that were will substitutes. *See Storm v. Storm*, 328 F.3d 941; *Marshall*, 392 F.3d 1118; *Golden*, 382 F.3d 348; *Georges v. Glick*, 856 F.2d 971 (7th Cir. 1988). Evans' claim does not involve any death or estate management. Instead, Evans is the settlor, who controls the res of her revocable trust and brings an in personam action against the trustee for damages. The circumstances surrounding the revocable trust do not impinge the concerns of a trust acting as a will substitute, and there is no justification, therefore, for the federal courts to invoke the probate exception to avoid hearing her claim for breach of revocable trust.

---

[3]The facts in *Lepard* are not clear, and *Lepard* thus does not define the breadth of the probate exception. This court noted that the plaintiff proceeded pro se and drafted an unclear complaint. *Lepard*, 384 F.3d at 234, 235. Although it appears that the conflict concerned distributions from two testamentary trusts of the plaintiff's deceased father, the court did not discuss the nature of the trusts or whether the father was living.

If, in contrast, exclusive probate jurisdiction under state law were to determine federal jurisdiction, nothing would prevent a state from purposefully moving whole bodies of law into its probate courts to constrict federal diversity jurisdiction. Moreover, such a holding would create a perverse incentive for parties to structure transactions with trusts to avoid federal jurisdiction. For these reasons, the district court had jurisdiction to hear Evans' claim for breach of the revocable trust.

Although we conclude that the district court had jurisdiction, we need not remand Evans' claim because Evans is collaterally estopped from arguing that her claim satisfies the applicable statute of limitations. Federal courts sitting in diversity "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Michigan law, "[c]ollateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined."[4] *See People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990). All of the requirements for issue preclusion under Michigan law are satisfied in this case.

Despite Evans' argument to the contrary, the facts underlying Evans' claims for breach of trust are the same for all three trusts. In both suits, she alleged that the Bank violated its fiduciary duty by having a conflict of interest, failing to invest prudently, failing to be loyal, and failing to disclose information to her. Evans' federal suit concerns Bank One's actions in the same three business transactions that were at issue in the state proceeding. That Evans now sues for breach of her revocable trust that contained nonvoting stock and over which the probate court determined that it lacked jurisdiction (as opposed to her grandfather's trust that contained voting stock and was testamentary) is a distinction without a difference for purposes of collateral estoppel. Because the factual issues and the applicable statutes of limitation are the same in both suits, collateral estoppel is relevant.

All of the requirements for collateral estoppel are satisfied in this case, and Michigan law therefore precludes Evans from asserting her claim for breach of trust. Bank One[5] and Evans, parties to this suit, were parties to the 2001 probate proceeding, which resulted in a valid, final judgment in the probate court against Evans. The Michigan Court of Appeals affirmed the judgment in February 2005, *see Evans v. Bank One Trust Co. N.A.*, Nos. 249974, 253745, 253824, 2005 WL 433573 (Mich. Ct. App. Feb. 24, 2005), and the Michigan Supreme Court has since denied leave to appeal, *see In re John F. Ervin Testamentary Trust*, 706 N.W.2d 14 (Mich. Nov. 29, 2005) (Table). The issue of whether Bank One breached its fiduciary duties in the course of the three acquisitions was decided in the probate court and on appeal and thus actually litigated. *See Monat*, 677 N.W.2d at 847 n.2. As for the final requirement that the issue be necessarily determined, Evans alleged in her complaint to the probate court that Bank One breached its fiduciary duties regarding the testamentary trusts because of its lending activities concerning the three major acquisitions. The state appellate court held that all of Evans' claims were barred by the applicable three-year statute of limitation used for "breaches of fiduciary duty." *Evans*, 2005 WL 433573, at *6. The appellate court also held that, because Evans "was presented with sufficient evidence to place her on notice

---

[4] Although "mutuality" is generally also a requirement for collateral estoppel under Michigan law, the Michigan Supreme Court recently held that mutuality is not required when collateral estoppel is used defensively. *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 852 (Mich. 2004).

[5] Although Meretta was not a party to the state proceeding, he is in privity with Bank One as an employee. All claims against Meretta concern his role as trust officer for Bank One and involve the same transactions as the claims against the corporate entities. Therefore, Meretta's presence in the current suit does not prevent the application of issue preclusion. *See Gates*, 452 N.W.2d at 630 (holding that privity fulfills the "same party" requirement).

of the now-challenged events[,]" she was not entitled to plead fraudulent concealment. *Id.* at \*7. Deciding this limitations issue was necessary to the suit because it concerned the timeliness of her claim and thus whether Evans could state a cause of action. Accordingly, all four criteria for issue preclusion have been met in this case, and the district court therefore properly dismissed Evans' claim for breach of trust.

## IV.

Evans' claims for shareholder oppression against the Bank One defendants and John Pearson concerning the 1993 and 1996 transactions are barred by Michigan's six-year statute of limitations, and she is not entitled to an extended limitations period by alleging fraudulent concealment. None of the parties challenge the district court's ruling that M.C.L. § 600.5813, providing a six-year limitations period, applies to Evans' claims. Evans argues, however, that her claims are not barred because she alleged fraudulent concealment pursuant to M.C.L. § 600.5855, which gives her two years after discovery of the concealment to bring her claim. Evans cannot rely on fraudulent concealment because she failed to plead fraudulent concealment with particularity, as required by Fed. R. Civ. P. 9(b). The decision of the Michigan Court of Appeals in the probate litigation also collaterally estops Evans from arguing that she did not have the information to uncover the oppression relating to the 1993 and 1996 transactions.

Evans did not sufficiently plead all of the required elements of fraudulent concealment. The Federal Rules of Civil Procedure, which control pleading in diversity cases, *see* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297 (3d ed. 2005), require that the acts constituting fraudulent concealment of a claim be pled in the complaint. *See* Fed. R. Civ. P. 9(b). The acts constituting concealment are "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). Whatever the status of the first two requirements, Evans failed to plead that she exercised any due diligence in discovering the facts that she alleged regarding the 1993 and 1996 transactions. Because Evans failed to plead fraudulent concealment with particularity, the district court properly dismissed her shareholder-oppression claims relating to the 1993 and 1996 transactions.

Moreover, even if Evans adequately pled fraudulent concealment, she was collaterally estopped from relying on it. The state appellate court's decision squarely determined that Evans cannot rely on fraudulent concealment because she possessed "sufficient evidence to place her on notice of the now-challenged events." *See Evans*, 2005 WL 433573, at \*7. Both suits involved Evans, Bank One, and John Pearson, and the probate suit progressed to a final, valid judgment that was affirmed on appeal. The limitations issue was actually litigated and necessarily determined. Thus, all four collateral estoppel criteria are once again satisfied.

Evans' shareholder-oppression claims concern the same events as her claims brought in the probate court. Evans' argument that the appellate court was considering only whether she had notice of actions that were "illegal," but not actions that were "fraudulent, or willfully unfair," fails because the nature of the claims and the underlying facts are identical. The relevant distinction between her shareholder and trust claims is not the description of malfeasance but rather the identity of the plaintiff: she sues as a shareholder in federal court, while she sued as a beneficiary in state court. Ultimately, Evans alleged the same facts to support both claims and argues that, contrary to the appellate court's conclusion, these facts were concealed. Her claims for shareholder oppression, therefore, are barred by the six-year statute of limitations, and the exception for fraudulent concealment is inapplicable.

## V.

Evans' shareholder-oppression action against the Bank One defendants and John Pearson concerning the 1998 transaction cannot succeed because she is collaterally estopped with respect to the facts in her complaint relating to the 1998 transaction. The only allegations Evans makes regarding the 1998 transaction, which she incorporates into the section of her complaint concerning the shareholder action, were that (1) the defendants failed to disclose that the trustee failed to perform due diligence, (2) a conflicting lending relationship existed, and (3) the acquisition was not reasonable. Because the Michigan Court of Appeals determined that Evans' three allegations were meritless, Evans is collaterally estopped from asserting the only facts that she alleged to support her shareholder claim of illegality, fraud, or oppressive acts regarding the 1998 transaction.

The Michigan Court of Appeals' decision that (1) the Bank disclosed information, (2) the lending relationship was proper, and (3) the transactions were reasonable collaterally estops Evans from alleging the facts upon which she grounds her shareholder-oppression claim. The state appellate court determined that Evans admitted in her depositions during the probate proceedings that she did not read the information sent to her, that she attended biannual shareholder meetings in which few questions were asked, and that Bank One had always attempted to answer her questions and complied with her requests for information. From these findings, the appellate court determined that she could not argue that full disclosure in the trust accounts had not been made. *See Evans*, 2005 WL 433573, at *4. The state court then held that the lending relationship in this case was proper. *See id.* at *7-*8. Finally, that court determined that the loans were proper on two statutorily approved grounds (they were both fair and approved by the directors after the disclosure of material facts), *see id.* at *8, and that the investment was prudent because it was an attempt to protect or increase Ervin's market share, *see id.* at *10. The resolution of these issues, as discussed earlier in this opinion, is binding on Evans: the same factual issues (disclosure, conflict of interest, and reasonableness) are relevant here, the same parties are involved, and the issues, as central to Evans' claims in probate court, were necessarily resolved after having been actually litigated. Because Evans is collaterally estopped from arguing the only facts that she alleged regarding the 1998 transaction, she has no factual basis on which to state her claim, and the district court properly dismissed Evans' shareholder-oppression claim relating to the 1998 transaction.

## VI.

Evans' fraud claims against all defendants regarding the 1993 and 1996 transactions are barred by the six-year statute of limitations, and her fraud claim based on the 1998 transaction is barred because she insufficiently pled the element of reliance. All parties agree that a six-year limitations period applies to fraud claims pursuant to M.C.L. § 600.5813. Evans' claims based on the 1993 and 1996 transactions are barred by this statute, although Evans argues that, as with her shareholder-oppression claims, the defendants' fraudulent concealment allows her claims to proceed under M.C.L. § 600.5855 for two years after learning facts that put her on notice. But, as with her claims for shareholder oppression, Evans cannot invoke the "fraudulent concealment" exception as to her claims concerning the 1993 and 1996 transactions because she insufficiently pled that she exercised due diligence, as required by Fed. R. Civ. P. 9(b).

As for Evans' claim regarding the 1998 transaction, Evans failed to plead reliance sufficiently and therefore is unable to state a claim for fraud. Evans did not allege that she invested money in the 1998 transaction, as she had done in the prior transactions. Evans unavailingly argues instead that she alleged in paragraph 49 of her complaint that she "relied implicitly on the representations" and that she was injured because she did not file suit to prevent the Barnsteel transaction. As mentioned earlier in this opinion, Fed. R. Civ. P. 9(b) applies to her complaint, and that rule requires that she plead the circumstances of her fraud and misrepresentations with particularity. *See* Fed. R. Civ. P. 9(b). Conclusory statements of reliance are not sufficient to

explain with particularity how she detrimentally relied on the alleged fraud, *see, e.g.*, *Smith v. Mitlof*, 198 F. Supp. 2d 492, 504-05 (S.D.N.Y. 2002) (holding that the complaint's allegation that the plaintiffs reasonably relied on the fraudulent representations was insufficient to meet the heightened pleading requirements of Rule 9(b)), and Evans in no way pled in her complaint the forbearance that she now invokes. Because Evans did not plead detrimental reliance in her complaint, the district court properly dismissed her fraud claim relating to the 1998 Barnsteel transaction.

## VII.

We review for abuse of discretion the district court's denial of Evans' requests for leave to amend, even though the district court stated mistakenly that it denied Evans' motion on the grounds of futility. When the district court refuses the plaintiff's request for leave to amend her complaint on grounds of futility, this court reviews de novo because the decision is based on a legal conclusion. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003). Otherwise, this court reviews denials of motions to amend under an abuse-of-discretion standard. *See Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997). In this case, although the district court denied "as futile" the first request for leave, the abuse-of-discretion standard is appropriate because the court did not deem proffered allegations useless. The district court, instead, denied the motion for failure to state the grounds for leave with particularity.

The district court did not abuse its discretion by denying Evans' first request for leave to amend her complaint because she failed to state the grounds for relief with particularity, and the district court did not abuse its discretion by denying her second request for leave because Evans' motion was not clearly presented as a distinct motion. Requesting leave to amend under Fed. R. Civ. P. 15(a) is governed by Fed. R. Civ. P. 7(b), which requires that a motion "shall state with particularity the grounds therefor . . . ." *See Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993). In her responses to the defendants' motions to dismiss and for summary judgment, Evans requested leave to amend in a single sentence without providing grounds or a proposed amended complaint to support her request. She, therefore, did not state the grounds with particularity. *See Confederate Mem. Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) ("We agree with several of our sister circuits that a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . .—does not constitute a motion within the contemplation of Rule 15(a)."); *see also PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004); *Begala v. PNC Bank*, 214 F.3d 776, 783-84 (6th Cir. 2000); *accord United States ex. rel. Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 387 (5th Cir. 2003); *Credit Chequers Info. Servs., Inc. v. CBA, Inc.*, No. 99-7600, 2000 WL 232046, at *1 (2d Cir. Jan. 26, 2000). Because Evans failed to state her grounds for amending with particularity in her first motion for leave, the district court did not abuse its discretion in denying Evans' request for leave to amend.

The district court also did not abuse its discretion in denying Evans' later requests for leave. After the district court had denied a clearly presented motion for leave to amend, Evans buried her subsequent requests for leave in her responses to the defendants' motions. Nothing in the Federal Rules of Civil Procedure requires the district court to entertain repeated motions that have already been denied or review Evans' requests until one is sufficient to qualify as a proper motion.

## VIII.

For the foregoing reasons, we AFFIRM the orders of the district court dismissing all of Evans' claims and denying her leave to amend her complaint.

---

**CONCURRENCE**

---

CLAY, Circuit Judge, concurring. I concur in the majority's opinion, but I write separately to express my concern over the friction between this Court's inquiry under the probate exception and Supreme Court precedent. In my view, the "exclusive jurisdiction" test, to determine whether this Court's jurisdiction is barred under the probate exception, conflicts with both *Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33 (1909), and *Markham v. Allen*, 326 U.S. 490 (1946).

As the majority recognizes, this Court employs an "exclusive jurisdiction" test to analyze whether the probate exception is applicable. In *Lepard v. NBD Bank*, this Court stated:

> The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court. This court applied the "probate exception" in *Bedo v. McGuire*, 767 F.2d 305 (6th Cir.1985), holding that the district court lacked subject matter jurisdiction over a claim for breach of fiduciary duty brought by the beneficiaries of the estate against the executrix because, under Ohio law, "exclusive jurisdiction of probate matters, including breach of fiduciary duty, is vested in the Probate Court." *Id.* at 306.

384 F.3d 232, 237 (6th Cir. 2004) (some internal quotations and citation omitted). The majority narrows the language of *Lepard* to apply only when a probate matter is involved;[1] in other words, if a state probate court has exclusive jurisdiction over a non-probate matter, then the probate exception would not apply. I agree that it would be absurd to preclude federal jurisdiction, under the probate exception, over, say, all tort matters, simply because the state legislature placed all tort matters within the exclusive jurisdiction of the state probate courts. I believe, however, that it is also inconsonant to preclude federal jurisdiction over probate matters simply because of the state legislature's bestowment of exclusive jurisdiction to the state probate courts. Two Supreme Court cases illustrate this point.

In *Waterman v. Canal-Louisiana Bank & Trust Co.*, the plaintiff was the niece of the testatrix. 215 U.S. at 39. The heart of the plaintiff's claim was that the testatrix had bequeathed $3,000 and a pro rata share of the residue of her estate to the Home for the Insane, a charity that the plaintiff claimed did not exist when the testatrix made her will. *Id.* at 40. The plaintiff claimed that she was the sole heir at law to the testatrix, so that she should receive the portion of the estate set aside for the Home for the Insane. *Id.* at 41.

The Supreme Court held that the federal courts had jurisdiction over the plaintiff's case.[2] As to suits against estates, the Court found that "the [federal] jurisdiction may be exercised, and is not subject to limitations or restraint by state legislation establishing courts of probate, and giving them jurisdiction over similar matters." *Id.* at 43. The Court further explained that, "[t]he rule stated in many cases in this court affirms the jurisdiction of the Federal courts to give relief of the nature stated, notwithstanding the statutes of the state undertake [sic] to give to state probate courts exclusive jurisdiction over all matters concerning the settlement of accounts of executros [sic] and

---

[1]Yet, as the majority points out, it is unclear in *Lepard* whether the trusts in that case were testamentary.

[2]The Court, however, found that to the extent the plaintiff asked the federal courts to exercise general jurisdiction over the estate, the federal courts did not have jurisdiction. *Id.* at 45.

administrators in the distribution of estates." *Id.* at 43-44. The Court qualified the exercise of federal jurisdiction by stating that a federal court could not "seize and control the property which is in the possession of the state court," although a federal court could adjudicate a party's rights to that property. *Id.* at 44. The Court also instructed that a federal court could not exercise general jurisdiction over an estate, as it "could not exercise original jurisdiction to draw to itself the entire settlement of the estate of the decedent and the account of administration, or the power to determine all claims against the estate. *Id.* at 45.

> Applied to the facts in that case, the Supreme Court held:

> The complainant, it is to be noted, does not seek to set aside the probate of the will, which the bill alleges was duly established and admitted to probate in the proper court of the state.

> . . .

> The United States circuit court, by granting this relief, need not interfere with the ordinary settlement of the estate, the payment of the debts and special legacies, and the determination of the accounts of funds in the hands of the executor, but it may, and we think has the right to, determine, as between the parties before the court, the interest of the complainant in the alleged lapse legacy and residuary estate.

*Id.* at 46.

The preceding case negates this Court's exclusive jurisdiction test in two respects. First, the statement of law given by the Supreme Court directs against such an inquiry. The Supreme Court twice noted that a state legislature could not define the boundaries of federal jurisdiction, *specifically in the context of probate matters*; the Supreme Court went further and found that notwithstanding the state legislature's demarcation of probate matters as within the exclusive jurisdiction of state probate courts, the qualified rule was that a federal court could still exercise jurisdiction over such matters. This would seem to be in direct opposition to the exclusive jurisdiction test. Second, while under the facts of *Waterman* the Supreme Court found that federal courts did have jurisdiction over the plaintiff's claim, under the exclusive jurisdiction test, the result would be the opposite. The majority finds that "this court has examined the exclusive jurisdiction of probate courts only when a claim concerned a decedent's estate." *Waterman* certainly involved a decedent's estate, so the exclusive jurisdiction test would apply under the majority's logic. Thus, if Louisiana, the relevant state in *Waterman*, placed exclusive jurisdiction over suits against an estate in the state probate courts, then federal jurisdiction would be inappropriate under the exclusive jurisdiction test; however, this was not the conclusion reached by the Supreme Court. *Waterman* is Supreme Court precedent directly on point as to why the exclusive jurisdiction test is inappropriate, even when confined solely to probate matters.

*Markham v. Allen* also demonstrates that the exclusive jurisdiction of a state probate court cannot define the reach of federal jurisdiction. In that case, the testatrix was a California resident whose will named legatees who were German nationals. 326 U.S. at 492. The controversy took place during World War II. *Id.* The defendants were heirs-at-law of the testatrix who claimed in California state court that under California law, the German legatees were ineligible as beneficiaries, so that the estate should be divided amongst those American heirs-at-law. *Id.* Shortly after the state law suit commenced, the plaintiff Alien Property Custodian, acting under federal statute, filed suit in federal district court, claiming that the plaintiff had acquired the interest of the German legatees, and that the American heirs-at-law had no interest in the estate. *Id.* at 493.

The Supreme Court held that the federal courts properly had jurisdiction over the plaintiff's suit. The Court found that while a federal court did not have jurisdiction to probate a will or

administer an estate, "federal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as" (1) the federal court did not interfere with the state probate proceeding; (2) the federal court did not assume general jurisdiction over the probate proceeding; and (3) the federal court did not assume control over property within the custody of the state court. *Id.* at 494 (internal quotations and citation omitted).

As applied to the facts of that case, the Court found that

> [a]lthough in this case [the plaintiff] sought a judgment in district court ordering defendant executor to pay over the entire net estate to the [plaintiff] . . ., the judgment declared only that [the plaintiff] is entitled to receive the net estate of the [testatrix] . . . . The effect of the judgment was to leave undisturbed the orderly administration of [the testatrix's] estate in the state probate court and to decree [the plaintiff's] right in the property to be distributed after its administration. This, as our authorities demonstrate, is not an exercise of probate jurisdiction or an interference with property in the possession or custody of the state court.

*Id.* at 495.

As to the statement of law, there is no mention of the exclusive jurisdiction of a state probate court as being the key inquiry under the probate exception. Instead, a federal court must look to whether federal jurisdiction would interfere with a state proceeding, whether the parties ask the federal court to assert general jurisdiction, and whether the federal court would interfere with property in the possession of state court. One can easily imagine where the requirements of *Markham* have been met, but where the exclusive jurisdiction test would preclude federal jurisdiction. Under the facts of *Markham*, for example, if California law vested state probate courts with exclusive jurisdiction over suits against the executor of an estate, then the exclusive jurisdiction test would lead to the conclusion that federal jurisdiction was inappropriate, despite the Supreme Court's holding to the contrary.

In sum, I disagree with the majority's position that the exclusive jurisdiction test, cabined to apply only in probate matters, is consistent with *Waterman* and *Markham*. That said, I believe that the principles outlined by the Supreme Court in *Waterman* and *Markham* lead to the conclusion that this Court has jurisdiction over Plaintiff's non-probate matter, *i.e.*, her claim involving her revocable trust. This Court having proper jurisdiction of that claim, I concur in the analysis that the claim is barred by collateral estoppel.